# Ga. Pacific Railway Co. *v.* Hughart.

*Action for Damages against Common Carrier, for Lost Goods.*

1. *Burden of proof as to delivery to connecting road.*—When a railroad company receives goods for transportation, consigned to a point on another connecting road, the bill of lading containing a stipulation that each carrier shall only be liable for losses or injuries while the goods are in its control; if the goods fail to reach their destination, the *onus* is on the receiving carrier to show that they were safely carried over its own road, and safely delivered to the connecting road.

2. *Stipulation in bill of lading, limiting liability of carrier as to value of lost goods.*—A common carrier can not stipulate for immunity from liability for goods lost or injured through the negligence or bad faith of his own servants, nor limit his liability to a fixed sum irrespective of the value of the goods; a clause limiting his liability to "$5.00 per 100 lbs.," without regard to the value of the goods, is both unreasonable and arbitrary, and is not binding on the shipper.

[Ga. Pacific Railway Co. v. Hughart.]

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAS. B. HEAD.

This action was brought by C. A. Hughart against the appellant corporation, as a common carrier, to recover damages for the loss of goods; and was commenced on the 4th September, 1888. The lost goods, consisting of three gallons of wine in bottles, wearing apparel, and other articles, were a part of the contents of a box which the plaintiff delivered to the defendant, at a station called *Henry Ellen*, to be transported to Green Pond, a station on the Ala. Great Southern Railroad. The freight charges were prepaid. The bill of lading stated that the goods were received "in outward apparent good order," and contained stipulations, (1) limiting value to $5.00 per 100 lbs. in case of total loss, and (2) that the defendant, "in receiving said goods to be forwarded as aforesaid, assumes no other responsibility for their safety or safe carriage than may be incurred on its own road, and it is expressly confined to the roads and stations of said" defendant. The bill of lading, which was offered in evidence by the plaintiff, was signed by him, "accepting its terms and conditions;" and he admitted that he had knowledge of its contents when he signed it. The bill of exceptions purports to set out all the evidence, and states that the defendant introduced no evidence. The plaintiff's evidence is thus stated:

"It was admitted that said goods were received for shipment at *Henry Ellen*, packed in a box in apparent good order, the lost goods being only a portion of the goods described in the bill of lading, and which were contained in the box; and that all the goods in the box, except those now sued for, were delivered to plaintiff, in good order, at Green Pond. An agent of the A. G. S. Railroad Company testified, in behalf of plaintiff, that he opened the car containing the goods in the Ala. G. S. Railroad Company's yard, at Birmingham, Alabama, four days after the day of the shipment from *Henry Ellen;* that the car was sealed and locked at the time he opened it, but that he did not know when, or in what condition, this car or its contents had been delivered by the defendant to the A. G. S. Railroad Company, except that the car was sealed and locked, as above stated, when he opened it; that when he opened said car, he saw the box containing plaintiff's goods; that the top was off, and the box was on its side, and the contents on the floor of the car; that he put the goods back in the box, nailed the top of the box on, and then forwarded the box and contents to Green Pond, the destination of the goods; that he could not say the articles sued for were missing from the box when he opened the car, or when he forwarded the same to

Green Pond; that the car and contents, for all he knew to the contrary, had been in the possession of the A. G. S. Railroad Company for two or three days, and the goods sued for might have been in the box; that the box and contents were not delivered to plaintiff until the expiration of seven days after the receipt of them by the defendant, and three days after the agent of the A. G. S. road saw them in its possession; that the distance from Birmingham to Green Pond, by way of said road, was only thirty miles, and half a day would be a reasonable time for transporting goods between them; also, that said box of goods had been badly coopered, and had not been nailed and put together as firmly as was necessary to reasonably insure it and its contents against damage on the route; and that he saw no bottles in the box, or on the floor of the car. Plaintiff's wife was then introduced as a witness for him, and testified that there were in said box, when delivered to the defendant at *Henry Ellen*, three gallons of wine in bottles; that the box was in a very damaged condition when delivered to her at Green Pond, and that the goods sued for were never delivered at Green Pond. Plaintiff then offered to prove by her the market value of the goods not delivered; to which defendant objected, because the contract limited the value of the goods to $5.00 per 100 lbs. The court overruled the objection, and allowed the witness to testify as to the market value of the goods; and defendant excepted."

On this evidence, the court charged the jury, (1) "that the burden was on the defendant to show that the goods sued for were delivered by it to the A. G. S. Railroad Company;" (2) "that the measure of damages was the market value of the goods, and they should assess plaintiff's damages at whatever sum the evidence showed was their market value." The defendant excepted to each of these charges, and requested the court to instruct the jury that they must find for the defendant, if they believed the evidence. The court refused this charge, and the defendant excepted.

The charges given, the refusal of the charges asked, and the admission of the evidence as to the value of the goods, are assigned as error.

JAMES WEATHERLY, for appellant, cited *Railway Co. v. Culver*, 75 Ala. 593; *Street Railway Co. v. Calderwood*, 89 Ala. 247; *Railroad Co. v. Sherrod*, 84 Ala. 181.

STONE, C. J.—The Georgia Pacific Railway Company, at one of its stations, received freight from appellee, with freight charges prepaid, consigned to the shipper at a station on the

[Ga. Pacific Railway Co. v. Hughart.]

Alabama Great Southern Railroad, To reach its destination, it was necessary for the freight to be transferred from one railroad to the other at Birmingham, Alabama. The bill of lading made provision for the transfer, and stipulated that each road should be only liable for losses and injuries suffered while the freight was in its control. This contract, under the law, required of the receiving road, the Georgia Pacific, that it should safely transport the freight over its line to Birmingham, and there safely deliver it to the Alabama Great Southern; and the burden was on it to prove it had done so. The freight failed to reach its destination.—*Alabama Great Southern R. R. Co. v. Thomas*, 83 Ala. 348; *Jones v. Cin. Sel. & M. Railway Co.*, 89 Ala. 376. It is not disputed that the freight sued for in this case failed to reach its destination.

The bill of lading recites, that the goods when received were "in outward apparent good order." It also contains this clause: "Released value limited to $5.00 per 100 lbs., case total loss." An agent of the Alabama Great Southern R. R. Co. testified, "that he opened the car containing the goods in the Alabama Great Southern Railroad Company's yard at Birmingham, Alabama, four days after the day of the shipment; that the car was sealed and locked at the time he opened it, but that he did not know in what condition this car or its contents had been delivered by the defendant to the Alabama Great Southern Railroad Company, except that the car was sealed and locked, as above stated, when he opened it; that when he opened said car he saw the box containing the plaintiff's goods; that the top was off, and the box was on its side, and the contents on the floor of the car; that he put the goods back in the box, nailed the top of the box on, and then forwarded the box and contents to Green Pond, the destination of the goods."

The testimony, if believed, proved that the goods sued for were in the box, and the box in outward good order, when it was received by the defendant railroad company, and that the goods failed to reach Green Pond, their destination. The testimony also proves, if believed, that the box had been opened, or had come open, before the car in which it had been shipped was opened in Birmingham. The testimony fails to prove that the freight was delivered safely and in good order by the Georgia Pacific to the Alabama Great Southern, and it fails to disprove negligence or bad faith on the part of the receiving railroad's employés. Considering the whole testimony, we can not affirm that there was no sufficient evidence from which the jury could find that the goods were lost or abstracted be-

fore the car containing them was turned over to the Alabama Great Southern, and that this loss was not without the negligence or perfidy of some one or more of the Georgia Pacific's employés. The City Court did not err in refusing to give the general charge in favor of the defendant.

It is contended for appellant, defendant below, that if plaintiff was entitled to a verdict, his recovery should have been limited to $5.00 per hundred pounds of the freight that was lost. Its exceptions to testimony, and to charges given, are founded on this contention. There is nothing in this contention; for the tendency of the testimony was, and is, that the goods were lost through the negligence or bad faith of the defendant's employés. In *Alabama Great Southern Railway Company v. Little*, 71 Ala. 611, it was said: "In the limitation of liability, the carrier can not, in any event, stipulate for more than an exemption from the extraordinary liability the common law imposes; the liability extending beyond that of ordinary paid agents, servants, or bailees, denominated the liability of an insurer. Public policy, and every consideration of right and justice, forbid that he should be allowed to stipulate for exemption from liability for losses or injuries occurring through the want of his own skill or diligence, or that of the servants or agents he may employ, or through his own or their willful default or tort. . . . The carrier can not stipulate for an absolute, unqualified exemption from all liability, nor can he stipulate that he will answer, in any and all events, only for a sum less than the value of the goods, because, in consideration of reduced rates of freight, the shipper may assent to it. For immunity from liability for his own frauds, no bailee can stipulate; for no man can contract to be safely dishonest."

We fully concur in what was said in *Little's Case, supra*, and hold that the City Court did not err in the matter of the measure of recovery.

It is not our intention to overrule or qualify what was said in *South & North Railroad Co. v. Henlein*, 56 Ala. 368, or in the later case of *Central Railroad Co. v. Smitha*, 85 Ala. 47. In consideration of special rates or privileges granted, a shipper may agree on values in case of loss or injury, provided such agreed valuations are not unreasonable, or arbitrary; and provided further, that no agreement exempting the carrier from the consequences of his perfidy or gross negligence is binding on the shipper. The rate expressed in the bill of lading before us—$5.00 per hundred pounds—without any reference to the actual value of the thing shipped, is both unreasonable and arbitrary, and is not binding on the shipper.

Affirmed.