# Southern Railway Company *v.* Jones. $\begin{vmatrix} 132 & 437 \\ 143 & 133 \end{vmatrix}$

*Action against Common Carrier for Negligent Injury
to Horse.*

[Decided Feb. 13th, 1902.]

1. *Contract; stipulation by common carrier against liability for its
    own negligence void.*—On principles of public policy a com-
    mon ·carrier cannot contract for immunity from liability for
    loss or injury resulting from his own or his servants' negli-
    gence.

2. *Same; limitation upon value of freight in consideration of re-
    duced rates.*—In consideration of reduced freight charges
    and the like, the shipper and carrier may contract that in
    case of loss or injury, whether resulting from negligence or
    other cause, the value of the property at the time· and place
    ·of shipment, not exceeding an expressed sum, shall be the
    measure of recovery; but they cannot by contract so limit the
    value as to make it unreasonable or greatly less than the
    real value of the article shipped.

3. *Same; limitation to value less than real value; carrier's knowl-
    edge of real value.*—As a limitation of value of freight, in
    a bill of lading, to a value greatly disproportioned to the real
    value is void because contrary to public policy, it is imma-
    terial whether the carrier knew or was informed of the real
    value or not.

4. *Contract contrary to public policy, what considered in deter-
    mining.*—In determining whether a stipulation is void as be-
    ing against public policy there is no room for inquiry into

[Southern Railway Company v. Jones.]

the knowledge, information or intention of the parties; the proper inquiry being whether to allow and uphold such contract would be fraught with wrong and injury to the people of a character from which government should protect them.

5. *Action against carrier; sufficiency of replication setting up a contract limiting valuation.*—In an action against a common carrier for negligently injuring a horse, where the carrier pleads a special contract of carriage, whereby, in consideration of reduced rates, the valuation of the horse was limited to $100 in case of damage, a replication is good which alleges "that the value of said mare was greatly in excess of $100, and that the alleged limit to the liability of defendant was greatly disproportioned to the real value of said mare and the alleged consideration for said alleged contract."

6. *Charges not in bill of exceptions not reviewed.*—Where charges copied in the record are not made part of the bill of exceptions the ruling of the court thereon can not be reviewed.

7. *Action ex delicto by owner of freight against carrier for negligently injuring same, where owner is neither consignor nor consignee.*—Where plaintiff's horse was injured by reason of the carrier's negligence while being carried under a contract made with plaintiff's bailee, who was named therein both as consignor and consignee, plaintiff can recover notwithstanding defendant did not know the horse was plaintiff's or that said consignor was acting for him.

APPEAL from Jefferson Circuit Court.

Tried before Hon. A. A. COLEMAN.

Action by Inez B. Jones against the Southern Railway Company. The complaint claimed $1,500 as damages "for that defendant, on the 6th day of November, 1899, was engaged in the business of a common carrier of live stock, from Anniston, Alabama, to Birmingham, Alabama, and as such common carrier of live stock undertook to carry a mare, the property of plaintiff, from said Anniston to said Birmingham, and it became and was defendant's duty to use due care to safely deliver said mare at said Birmingham to the consignee thereof, but notwithstanding said duty defendant so negligently conducted itself in that regard that said mare was greatly injured and damaged, and the value of said mare greatly lessened or destroyed." Defendant's fourth plea was as follows: "That the plaintiff, through her agent,

Thomas F. Boam, entered into a contract in writing with this defendant, in which contract, in consideration of a reduced rate of freight to be paid by the plaintiff to the defendant, it was stipulated and agreed that in case of injury to the animal so shipped the liability of defendant should be limited to the sum of one hundred dollars."

The replication to this plea was as follows: "That the value of said mare was greatly in excess of $100, and that the alleged limit to the liability of defendant was greatly disproportionate to the real value of said mare and the alleged consideration for said alleged contract." The demurrers to this replication were upon the grounds that it fails to show that defendant, when it made said contract, was informed as to the real value of the mare; and because it failed to show that defendant practiced any fraud upon plaintiff, or Boam, in making said contract or fixing said valuation at $100. These demurrers were overruled. The portions of the general charge to which defendant excepted stated the law with regard to the validity of the limitation of value in the contract substantially as is stated in the opinion. Charges 2, 3 and 6 refused to defendant were as follows: (2) "If the jury believe the evidence they can not find a verdict for the plaintiff for more than one hundred dollars." (3.) "In estimating the damages, if any, to which the plaintiff may be entitled the jury may consider the contract of the parties with reference to the amount of damage which the plaintiff or her agent might claim, in case of loss or injury, and if there is no evidence that the defendant was informed that the animal was of exceptional or extraordinary value, and the circumstances under which the animal was received for transportation did not suggest that the animal's value disproportionately exceeded $100, you cannot find a verdict for the plaintiff for more than that sum." (6.) "If the mare had an exceptional value owing to her training and qualities as a race horse, and if you believe from the evidence that this fact was not communicated to or known by the defendant's agent when the contract of shipment was made, and there was nothing in the appearance of

the mare to indicate that she was of more than ordinary value, you cannot find a verdict for more than $100." There was judgment for plaintiff for $300, and defendant appeals.

SMITH & WEATHERLY, for appellant.—(1.) The demurrer to the replication to the fourth plea should have been sustained.—*Western Ry. Co. v. Harwell*, 91 Ala. 340; s. c. 97 Ala. 341; *R. R. Co. v. Sherrod*, 84 Ala. 178; *Hart v. R. R. Co.*, 112 U. S. 331; *S. & N. R. R. Co. v. Henlein*, 52 Ala. 606; s. c. 56 Ala. 368; Hutchinson on Carriers, §§ 249-252. (2.) The plaintiff cannot sue *in tort* based on the contract with Boam.—*Lucas v. So. Ry. Co.*, 122 Ala. 529; *R. R. Co. v. Parker*, 27 So. Rep. 326.

BOWMAN & HARSH, *contra.*—(1.) A common carrier cannot limit its liability for negligence.—*A. G. S. R. R. Co. v. Little*, 71 Ala. 611; *E. T. V. & G. R. R. Co. v. Johnson*, 75 Ala. 605; *L. & N. R. R. Co. v. Gidley*, 119 Ala. 523; 15 Minn. 270; 93 U. S. 174; 69 N. W. Rep. 372; 83 Mo. 574. (2.) A provision in a carrier's contract fixing the valuation in case of loss or injury at a sum less than the real value is contrary to public policy and void.—*A. G. S. R. R. Co. v. Little*, 71 Ala. 611; 21 S. W. Rep. 757; 12 Ill. App. 54; 88 Tenn. 320; 75 Tex. 300; *Eels v. St. L. K. & N. W. R. R. Co.*, 52 Fed. Rep. 903; 18 Fed. Rep. 318; *York Mfg. Co. v. I. C. R. R. Co.*, 3 Wallace 107; *N. Y. Cen. R. R. Co. v. Lockwood*, 17 Wallace 357; *Bank of Kentucky v. Adams Exp. Co.*, 93 U. S. 174; *G. T. R. R. Co. v. Stephens*, 95 U. S. 655; *M. P. R. R. Co. v. Edwards*, 78 Tex. 307; *C. & N W. R. R. Co. v. Chapman*, 133 Ill. 96; *Ft. Worth & D. G. R. R. Co. v. Greathouse*, 82 Tex. 104; *Taylor B. & H. R. Co. v. Montgomery*, 4 Tex. App. (Civ. Cas.) 401.

McCLELLAN, C. J.—(1) It is conceived to be settled in Alabama on principles of public policy that a common carrier cannot contract at all for immunity from liability for the loss of or injury to property re-

sulting from his own or his servant's negligecne.
(2) It is conceived to be settled in this State also
that in consideration of reduced freight charges and
the like, the shipper and the carrier may contract that
in case of loss or injury, whether resulting from negli-
gence or other cause, the value of the property at the
time and place of shipment not exceeding an expressed
sum shall be the measure of recovery. And (3) it
has also been declared by this court that under such
contract recovery will be limited to the sum so expressed
unless the real value of the property is greatly dispro-
portionate thereto—so much greater than the stipu-
lated maximum of value and liability as to render the
contract unreasonable, and, therefore, not binding on
the shipper. We have no doubt of the correctness of the
first proposition. Of the soundness of the second the
writer has always had the gravest doubts. Indeed, if
it were an open question he should adopt the views ex-
pressed in the dissenting opinion of MANNING, J., in
*South & North Ala. Railroad Co. v. Henlein,* 52 Ala.
606, 616. He does not see how this proposition can
logically stand with the first stated above. But con-
ceding it to be settled, the limitation upon it em-
braced in the third proposition shears it to a large ex-
tent of its evil tendencies and possibilities, and brings
the law back toward the salutary and true doctrine
that common carriers cannot stipulate, under any cir-
cumstances, against liability for the consequence of their
own negligence; and we are of opinion that while under
our adjudications the carrier in consideration of re-
duced freight charges may agree with the shipper that
in case of loss or injury the recovery shall be limited to
a valuation of the property expressed in the bill of lad-
ing and that such agreement will be enforced by the
courts when such valuation is not greatly below the
real worth of the property, such agreements will not be
countenanced or given effect if they are unreasonable
—if they limit damages for loss or injury to an amount
greatly less than the damages in fact sustained. It
is plain that this doctrine must be rested upon the same
ground that underlies the original proposition forbid-

ding agreements against liability for the results of negligence, public policy. And in determining whether a stipulation is void as being against public policy there is no room for inquiry into the knowledge, information or intention of the parties. The question is not what the parties knew or intended but what is the effect of the stipulation, not whether the parties intended evil or knew their act was hurtful to the public, but whether to allow and uphold such contracts would be fraught with wrong and injury to the people of a character from which it is the province and duty of government to protect them. So it is immaterial when a carrier has stipulated for a limitation of damages resulting from his negligence to a greatly disproportionately small valuation of the property carried whether he knew or was informed of its real value or not. It is against the public good in respect of a matter of governmental concern that he should be allowed to make such stipulation under any circumstances; and to allow it to stand in any instance or upon any consideration would be to emasculate the principle of public policy obtaining in the premises and to leave the public exposed to all the uncertainties incident to inquiries into what carriers intended, or knew or had been informed as to the real value of property transported by them.

The application of the foregoing views to the case in hand brings us to the conclusion that the trial court did not err in overruling the demurrer to the replication to the fourth plea, nor in those parts of the general charge to which exceptions were reserved, nor in refusing to give charges 2, 3 and 6 requested by the defendant.

It is stated in the bill of exceptions that "defendant requested the court to give the following written charges, numbered 1, 2, 3, 5, 6, 7 and 8, namely:" Here charges 1, 2, 3, 5 and 6 are set out, but not 7 and 8, nor any other charge. The bill of exceptions concludes: "But the court refused to give each of said written charges," etc., etc. As part of the record proper of the trial court, under the heading, "Defendant's refused charges," seven charges are copied into the transcript,

each indorsed, "Refused. A. A. Coleman, J." These are not numbered, but the first five of them severally are the same as the five charges which appear in the bill of exceptions. The remaining two, we suppose, are the charges referred to in the bill of exceptions as charges 7 and 8. But whether these two charges are sufficiently identified as being those numbered 7 and 8 referred to but not copied in the bill of exceptions, is not material. Not being copied in the bill of exceptions the ruling of the court upon them cannot be reviewed.—*Nuckols v. State,* 109 Ala. 2.

This is an action *ex delicto* sounding in damages for an injury to plaintiff's horse tortiously inflicted by defendant's servants. Any person proximately injured by the commission of a tort may maintain an action for the wrong and injury. True, there was averment that the defendant undertook as a common carrier to transport the horse from Anniston to Birmingham, and there was proof that this undertaking was under a contract made by defendant with one Boam who was in possession of the animal as bailee of plaintiff and who was both consignor and consignee. But all this went merely to show that defendant was under a duty to exercise due care in carrying the animal as a predicate for the conclusion in connection with averment and proof of its failure to exercise due care—its negligence —that it had tortiously injured the horse, and thereby damaged its owner, the plaintiff. And the action was in no sense upon the contract between defendant and Boam, but was for a wrong and injury done to the plaintiff by the defendant, one element of which was that defendant had possession of plaintiff's property under circumstances which imposed upon it the duty of conserving its safety and well-being. There is, we therefore conclude, no merit in the tentative insistence of appellant's counsel that the owner of the property could not recover for defendant's negligence because the animal was being carried under a contract with Boam and defendant had no notice that Boam was acting for the plaintiff.

The points to which we have adverted are the only ones discussed in the brief for appellant.

Affirmed.