# Southern Express Co., v. Owens.

*Action for Damages for Loss of Manuscript.*

(Decided April 28, 1906. 41 So. Rep. 752.)

1. *Carriers; Carriage of Goods; Limiting Liability; Negligence.*—A carrier cannot, as a paid bailee, limit the extent of its liability for the negligence of itself, or its servants or agents, by

[Southern Express Co. v. Owens.]

an agreed valuation upon consideration of reduced charges for carriage of goods, where such agreed valuation is disproportionate to the real value of the goods, although the contents of the package, or its real value are not disclosed to the carrier.

2. *Contracts; Evidence; Judicial Notice; Foreign Decisions.*—While it is true the contract is governed by the law of the place, this doctrine must be invoked by pleading, sustained by proof, of the laws of the jurisdiction in which the contract was made, for the courts do not take judicial notice of the decisions of other states.

3. *Carriers; Action for Loss of Goods; Evidence; Admissibility.*— Where the action was for the loss of a manuscript, constituting material to be used as a text book, upon a subject on which no text book had been published, although such manuscript had no market value, it was proper to permit plaintiff to testify to the time and labor spent in the preparation of the manuscript, and to what he thought it was worth.

APPEAL from Anniston City Court.

Heard before Hon. Thomas W. COLEMAN, JR.

This is an action for the loss of a package of manuscript delivered by plaintiff's agent to the Southern Express Co., in Columbia, S. C., to be conveyed by express to plaintiff in Sumter, S. C. The complaint was in code form. The pleas were first, the general issue, 2nd, tender, 3rd, the limitation of liability to the amount of fifty dollars as damages in consideration of a nominal sum to be paid to carrier for carriage; 4th, tender of amount with interest and its payment into court. 5th, limitation of liability. In this plea the terms of bill of lading are set out in full and 7th, the fact that it was a South Carolina contract to be performed wholly in that State, but the plea does not set forth the South Carolina law covering such contract. There was judgment for plaintiff for $1,500.

J. J. WILLETT, for appellant.—The contract was undoubtedly a South Carolina contract, governed by the law of South Carolina. Alabama is merely the law of the forum to which the plaintiff has since removed. The

stipulation in the bill of lading limiting the liability has received careful attention from the South Carolina court and is held to restrict recovery to the amount so named. *Johnson v. Richmond Ry. Co.*, 35 S. C. 55. The law is also firmly settled in Alabama that the shipper and carrier may contract that in case of loss or injury, whether resulting from negligence or other cause, the value of the property at the time and place of shipment does not exceed an express sum, and this shall be the measure of recovery.—*Southern Ry. Co. v. Jones*, 132 Ala. 437; *Western Ry. Co. v. Harrell*, 91 Ala. 340; *L. & N. R. R. Co. v. Sherrod*, 84 Ala. 178. Where a firm has a blank book of the express company's receipt and fills out same in shipping goods without stating the true value of the article shipped, they must be limited to $50.00 stated in the receipt.—*Oppenheimer v. U. S. Express Co.*, 18 Am. Rep. 596; *Orange Co. Bank v. Brown*, 9 Wend. 115; 2 Greenleaf Ev. 215; Angel on Carriers, 245; *F. & M. Bank v. Chaplain*, 23 Vt. 186; *Moses v. B. & M. R. R. Co.*, 4 Foster 85; *C. & A. R. R. Co. v. Thompson*, 119 Ill. 578; *Ernest v. Express Co.*, 1 Woods 573; *Magnin v. Dinsmore*, 62 N. Y. 35; *Pacific Express Co. v. Foley*, 26 Am. St. Rep. 107; *Harvey v. T. H. etc. R. R. Co.*, 74 Mo. 539; See also the following cases:—*Duntley v. Boston, etc. R. R. Co.*, Sup. Ct. N. H. 1890; *Magnin v. Dinsmore*, 62 N. Y. 35; 20 Am. Rep. 442; *Squire v New York Central R. R. Co.*, 98 Mass. 239-245; *Graves v. Lake Shore etc. R. R. Co.*, 137 Mass. 33; *Hill v. Boston etc. R. R. Co.*, 144 Mass. 284; *Falkenau v. Fargo*, 3 Jones & S. 332; 55 N. Y. 642; *Chormley v. Dinsmore*, 21 Jones & S. 36; *Westcott v. Fargo*, 6 Lans. 328; *Grace v. Adams*, 100 Mass. 505; 97 Amer. Dec. 117; 1 Am. Rep. 131; *Pemberton Co. v. New York Central R. R.*, 104 Mass. 144; *Breese v. United States Tel. Co.*, 48 N. Y. 132, 139, 141, 142.

Owen's agent having made the contract limiting the liability, Owen is bound thereby.—*Levy v. So. Express Co.*, 4 S. C. 234; *Smith v. So. Express Co.*, 104 Ala. 387; 12 Am. & Eng. Ency. of Law, p. 464. In such a case, parol evidence is not admissible to alter or vary the ef-

fect of a receipt given by the express company.—*Smith v. So. Express Co., supra.* By this suit, Owen avails himself of the contract of afreightment made with the defendant, and he is bound by the contract, 5 Am. & Eng. Ency. of Law, p. 294. Where the shipper fraudulently conceals the nature or value of his goods or deceives the carrier in any way as to them, and the concealment of the character of the goods operates to induce the carrier to transport them in a different manner (as in this case) than it would have adopted had the carrier known their true character and the goods were lost thereby, the carrier is relieved from liability altogether.—*Everett v. So. Express Co.,* 46 Ga. 303; *Ernet v. Express Co., supra; Magnin v. Dinsmore, supra; Oppenheimer v. U. S. Express Co., supra.* The court erred in sustaining demurrers to defendant's plea setting up the thirty day limitation in the bill of lading within which time claims against the company must be presented. While it is true that if this was an Alabama contract the court's ruling would be justified under the case of *So. Express Co. v. Bank,* 108 Ala. 517, yet this not being an Alabama contract, the authorities elsewhere hold that such a stipulation is reasonable and valid.—*Southern Ex. Co. v. Hunnicutt,* 54 Miss. 566; *Glenn v. So. Express Co.,* 86 Tenn. 594; *Express Co. v. Caldwell,* 21 Wallace 264; *U. S. Express Co. v. Harris,* 51 Ind. 127.

The plaintiff has failed to prove any damages. He fails to show that it had any market value and also fails to show what the cost of reproduction in time, labor and expenses would have been.—*Matthews v. American Express Co.,* (Mass.) 52 Am. Rep. 258; *Green v. Boston B. & L. R. R. Co.,* 128 Mass. 221; *Adams Express Co. v. Hoing,* 9 Ky. Law, 814. Plaintiff can recover only such damages as were in contemplation of the parties as a result of the breach of the contract, not those resulting from some outside exceptional fact.—*Swift & Co. v. Eastern Warehouse Co.,* 86 Ala. 294; *Matthews v. American Express Co.,* 138 Mass. 55; 12 Am. & Eng. Ency. of Law, 2nd Ed. The general rule is as announced by this court that the measure of damages recoverable by the

shipper is the market value of the goods at the point of destination with interest from the time they should have been delivered less the amount of charges for their carriage.—5 Am. & Eng. Ency. of Law, p. 373; *Capehart v. Granite Mills*, 97 Ala. 353; *S. & N. A. R. R. Co. v. Wood*, 72 Ala. 451; *L. & N. v. Gilmer*, 89 Ala. 534; *E. T. v. Johnson*, 75 Ala. 596. In case of loss or damage to goods which have no market value but which are useful chiefly to the owner, the measure of damages is not their market value at the time and place of delivery but their value to the owner; and such value is not determined by his partiality for them, nor by what he might possibly sell them for, but by the actual money loss he would sustain by being deprived of their use.—5 Am. & Eng. Ency. of Law, 390; *Cooney v. Pullman Co.*, 121 Ala. 368. What plaintiff might have sold his manuscript for in the open markets and its success as a text book is entirely too speculative.—*Yoakum v. Dunn*, 1 Tex. See App. 524; *International R. R. Co. v. Nicholson*, 61 Tex. 550. The best discussion as to the measure of damages in the present case can be found in Sutherland on Damages, (3 Ed.) 919. See also 6 Cyc.

BLACKWELL & AGEE, for appellee.—The demurrer to the 6th plea was properly sustained.—*So. Express Co. v. Bank of Tupelo*, 108 Ala. 517; *Southern Express Co. v. Capeton*, 44 Ala. 101. The contract did not limit the liability to fifty dollars when negligence is shown.—*So. Ry. Co. v. Jones*, 132 Ala. 437; *W. R. R. Co. v. Harwell*, 91 Ala. 340. The manuscript had value and the court properly awarded the damages.—*Howard College v. Turner*, 71 Ala. 434; *Cooney v. Pullman Car Co.*, 121 Ala. 368. In determining the value of property which has no market value, the court will look to the costs of the same and the probable cost of reproducing or replacing the same.—*Houston v. Texas, etc.*, 40 Am. Rep. 808; *Green v. B. & L. R. R. Co.*, 35 Ala. 370. In any event, the fundamental idea in assessing damages for a legal wrong is compensation, and the difficulty of ascertaining the value is no bar to the right of compensation.—8

[Southern Express Co. v. Owens.]

A. & E. Ency of Law, 614; *Smith Mfg. Co. v. Gay,* 57 L. R. A. 193 and note on page 196.

DENSON, J.—This litigation arose from the failure of the defendant to deliver to the plaintiff certain goods that were delivered to the defendant as a common carrier at Columbia, S. C., to be carried to Sumter, S. C., to be there delivered to the plaintiff, the consignee. The complaint is in code form. Code 1896, p. 946, form 15. The description of the goods in the complaint is sufficiently definite to put the defendant on notice as to the particular package on which defendant's alleged dereliction was predicated. Hence the demurrer to the complaint was properly overruled.

It appears from the record that there was no controversy about the facts that the goods were received by the defendant as alleged and that they were never delivered. In other words, the liability of the defendant was conceded, but it sought to limit its liability to $50. Pleas 2 and 7 presented this defense. Manifestly the contract sued on is a South Carolina contract. For this reason it is insisted by the appellant that the contract with respect to the liability of the defendant should be construed as such contracts have been construed by the Supreme Court of that state; in other words, that in declaring the substantive law of the case we should be governed by the adjudications of that court. This insistence invokes the dictrine of *lex loci contractus,* a doctrine which is well established and adhered to in this state. "Parties are presumed to be conversant of the laws of the country in reference to which they contract, and to stipulate with regard to them; and it is a maxim, that *'locus contractus regit actum,'* unless the parties have manifested a contrary intention."—*Hanrick v. Andrews,* 9 Port. 25; *Peake v. Yeldell,* 17 Ala. 636; *Thomas v. DeGraffenreid,* 17 Ala. 609; *Camp v. Randle,* 81 Ala. 240, 2 South. 287; *So. Ry. Co. v. Harrison,* 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936.

But the doctrine and maxim can be invoked only by appropriate pleading, followed by proof, of the laws of

26

the foreign jurisdiction. We cannot take judicial knowledge of the decisions of the courts of other states.—*Cubbedge v. Napier*, 62 Ala. 518; *Varner v. Young*, 56 Ala. 260. The South Carolina decision relied on by the appellant was not offered in evidence in the court below, and we cannot regard it as evidence here. "It can be consulted by us, as we could consult the opinion of any other reputable Supreme Court of a sister state; but it does not bind us as an adjudication."—*Varner v. Young, supra.* The contract, then, must be construed by the principles of the common law, and in the absence of pleading and proof to the contrary we will presume that the common law on the subject in South Carolina is the same that it is in Alabama.—2 Wharton on Conflict of Laws (3d Ed.) p. 1534; *Crandall v. Great Northern R. R. Co.*, 83 Minn. 190, 86 N. W. 10, 85 Am. St. Rep. 458; *Forepaugh v. Delaware R. R. Co.*, 128 Pa. 217, 18 Atl. 503, 5 L. R. A. 508, 15 Am. St. Rep. 672.

The point presented by the pleadings to be determined is whether a carrier may limit the extent of his liability by an agreed valuation upon consideration of reduced charges for carrying a package, when the agreed valuation is greatly less than the real value of the package, and the contents of the package or its value are not disclosed to the carrier. In the case of *A. G. S. R. R. Co. v. Little*, 71 Ala. 611, this court said: "The liability of a common carrier is sometimes said to be of a dual nature—the one, a liability for losses by his own negligence or omission of duty, or that of his servants or agents, which is the liability of an ordinary paid agent or his bailee; the other, a liability for the losses by mistake or accident without any fault on his part, for losses accruing by unavoidable accidents, not within the exception of 'the act of God, or of the public enemy, or the fruit of the party complaining,' which is of the nature of the liability of an insurer, having its origin and foundation in the policy of the common law.—*Davidson v. Graham*, 2 Ohio St. 131. Whatever doubts may at any time have been entertained, it is now well settled that by special contract the carrier may limit or qualify the liability

resting on him as an insurer, or his common-law liability, as it is most often expressed.—*Steele v. Townsend*, 37 Ala. 247, 79 Am. Dec. 49; *M. & O. R. R. Co. v. Hopkins*, 41 Ala. 486, 94 Am. Dec. 607; *M. & O. R. R. Co. v. Jarboe*, 41- Ala. 644; *S. & N. A. R. R. Co. v. Henlein*, 52 Ala. 606, 23 Am. Rep. 578. The limitation of liability may extend, not only to the risks of accidents for which the carrier will be answerable, but to the amount of damages for which he will be answerable in the case of loss or injury, when the purpose appears to secure a just and reasonable proportion between the amount for which he is liable and the freight which he is to receive. In the limitation of liability, the carrier cannot, in any event, stipulate for more than an exemption from the extraordinary liability the common law implies; the liability extending beyond that of ordinary paid agents, servants, or bailees, denominated the 'liability of an insurer.' Public policy and every consideration of right and justice forbid that he should be allowed to stipulate for exemption from liability for losses or injuries occurring through the want of his own skill or diligence, or that of the servants or agents he may employ, or through his own or their willful default or tort."

In the case of *Ga. Pac. Ry. Co. v. Hughart*, 90 Ala. 36, 9 South. 62, goods were received for shipment packed in a box in apparent good order. A portion of the goods in the box were lost—were not delivered by the common carrier. The bill of lading contained a clause limiting the value of the goods to $5 per 100 pounds in case of total loss; and it was contended on the trial that, if the plaintiff was entitled to a verdict, his recovery should be limited to $5 per 100 pounds of the freight that was lost. The court said: "There is nothing in this contention; for the tendency of the testimony was, and is, that the goods were lost through the negligence or bad faith of the defendant's employes." Then follows the quotation from the *Little Case* that we have set out above, and the court said of it: "We fully concur in what was said in *Little's Case, supra,* and hold that the city court did not err in the matter of the measure of recovery." The

court further said in the *Hughart Case*: "It is not our intention to overrule or qualify what was said in *S. & N. A. R. Co. v. Henlein*, 56 Ala. 368, or in the later case of *Central Ry. Co. v. Smitha*, 85 Ala. 47, 4 South. 708. In consideration of special rates or privileges granted, a shipper may agree on values in case of loss or injury, provided such agreed valuations are not unreasonable or arbitrary, and provided, further, that no agreement exempting the carrier from the consequences of his perfidy or gross negligence is binding on the shipper. The rate expressed in the bill of lading before us—$5 per 100 pounds—without any reference to the actual value of the thing shipped, is both unreasonable and arbitrary, and is not binding on the shipper."

In *L. & N. R. R. Co. v. Sherrod*, 84 Ala. 178, 4 South. 29, the case most strongly relied on by appellant here, the bill of lading contained a stipulation limiting the value of the goods and the extent of the defendant's liability in case of total loss. The agreed statement of facts showed that without such agreement as to the value a much greater rate of freight was charged on such shipments than was charged, which rate was reasonable, and that the limitation as to value was in consideration of a reduced rate of freight and was inserted in the bill of lading as a part of the contract of shipment. In that case this court, speaking through Judge Clopton, said: "Limitations as to the value do not come under the operation of the rule that a carrier cannot, by special contract, exempt himself from liability for the consequences of his own negligence, and ordinarily are not calculated to induce negligence. To the amount of the agreed valuation the carrier is responsible for loss so occasioned by his neglect, or by any of the risks or accidents for which he is answerable. No public good will be subserved by denying to the parties the right to make such contracts. The shipper and the carrier may lawfully contract as to the valuation of the articles to be transported. Such special contract is in the nature of an agreement to liquidate the damages, proportionately to the compensation received for the carriage and the responsibility of

safely carrying and delivery. When the value has been fairly agreed on, the carrier cannot recover a greater rate, and the shipper should not be allowed to take benefit of the reduced rate, if there is no loss, and to repudiate the contract, if there is a loss."

It would seem than in *Sherrod's Case,* the distinction so clearly made in the *Little* and *Hughart Cases* with respect of the dual nature of the liability of the common carrier was lost sight of; for it is clearly held in those cases that, while a common carrier may by contract limit or qualify the liability resting upon him as an insurer, he cannot in any event stipulate for more than exemption from the extraordinary liability the common law imposes. In short, he cannot stipulate for exemption from or limitation upon his liability for losses by his own negligence or omission of duty, or that of his servants or agents, which is the liability of an ordinary paid agent or bailee. The argument urged in the *Sherrod Case* makes the degree of care requisite in the handling of goods depend, not on the nature of the thing to be carried—which ought to be the test of degree of care to be used by all persons or corporations pursuing the business of common carriers, even where a lawful contract limiting liability exists—but on the amount of compensation to be paid. It is said in that case that contracts by common carriers limiting liability are not ordinarily calculated to induce negligence, but exact from the carrier the measure of care due to the value agreed on. But would it not be a very dangerous rule which permits care to be measured by value? It would lead to a holding that the carrier owes but a slight degree of care when the thing to be carried is of small value intrinsically or by an agreed valuation, and the rule would be as fluctuating as is the value of things carried.

We understand the rule to be universal that the carrier must, even when a valid contract limiting liability exists, exercise such care as prudent persons would ordinarily use for the safety of the thing shipped, looking to the nature of that thing. A different rule would make the measure of care to depend on the adequacy of the sum

paid for transportation, this to be determined by the value of the thing to be carried, and which cannot be a correct rule, unless it be true that the degree of care to be used by a common carrier is to be measured by the compensation to be paid. We do not understand that such a rule ever has been or ever ought to be established. Followed to its legitimate result, such a rule would require the holding that a carrier by agreeing to gratuitously transport freight might by contract relieve itself from liability entirely and from obligation to exercise even the slightest care. In the case of a gratuitous mandatary, not charged with any public duty, we understand such rule to have been denied. It seems to us that such contracts do induce a want of care, for the highest incentive to the exercise of due care rests in a consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. The author of the American & English Encyclopedia of Law says: "By the clear weight of authority in England, Canada, the United States, and almost without exception in the states of the Union, the rule has been adduced that the common carrier can make no contract the effect of which will be to exempt him from liability for negligence."—2 Am. & Eng. Ency. Law, 822.

Is the limitation in the contract before us within the prohibition of this eminently just and generally accepted principle? Manifestly the stipulation does not contemplate total exemption from liability. It only provides for partial or limited exemption. Upon that distinction the nice and important question arises: Can a stipulation of the latter character stand before the law when one of the former kind cannot? Or, to state the same question differently, and so as to apply it more directly to the facts of this case, the rule of law being established, as we have seen it is, that the defendant company could not lawfully have contracted with the plaintiff that it would in no event be liable for any part of the value of the property lost or destroyed, can the limitation of its liability to $50 be upheld in the court, if it

should appear that its loss resulted from the negligence of the company and that it was in fact worth 30 times that amount, as the court found it to be? We think not. To our mind it is clear that the two kinds of stipulation—that providing for total, and that providing for partial, exemption from liability for the consequences of the carrier's negligence—stand upon the same ground and must be tested by the same principles. If one can be enforced, the other can. If either be invalid, it would seem that both must be held to be so; the same consideration of public policy operating in each case. The last utterance by this court on this subject is in line with the foregoing views, and we think is sound.—*Sou. Ry. Co. v. Jones*, 132 Ala. 437, 31 South. 501. See, also, *Railway Co. v. Wynn*, 88 Tenn. 320, 14 S. W. 311; *Coward v. Railway Co.*, 16 Lea. 225, 57 Am. Rep. 227; *Moulton v. St. P., M. & M. Ry. Co.*, 31 Minn. 85, 16 N. W. 497, 47 Am. Rep. 781; *Railway Co. v. Simpson*, 30 Kan. 645, 2 Pac. 821, 46 Am. Rep. 104; *Railway Co. v. Abels*, 60 Miss. 1017; *U. S. Ex. Co. v. Blackmon*, 28 Ohio St. 144; *Black v. G. T. Co.*, 55 Wis. 319, 13 N. W. 244, 42 Am. Rep. 713; *Rosenfield v. Ry. Co.*, 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500; *M. P. Ry. Co. v. Fagan*, (Tex. Sup.) 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; *Boscowitz v. Adams Exp. Co.*, 93 Ill. 525, 34 Am. Rep. 197.

We have examined the authorities relied upon by the appellant, and some of them undoubtedly support its contention. But we think the true rule is, and should be, that a common carrier has the right to restrict his common-law liability by special contract; and this extends to all losses not arising from his own neglect or omission of duty. "He cannot, however, protect himself from losses occasioned by his own fault. He exercises a public employment, and diligence and good faith in the discharge of his duties are essential to the public interest. He is held to that degree of diligence which very careful and prudent men take of their own affairs, and he is responsible for all losses arising from a neglect of that degree of diligence enjoined upon him by his

public employment; and public policy forbids that he should be relieved by special agreement from that degree of diligence and fidelity which the law has exacted in the discharge of his duties. The degree of diligence required by law of a common carrier is a matter over which he has no control and in which the public is interested."—*Sou. Ry. Co. v. Jones,* 132 Ala. 437, 31 South. 501; *Ga. Pac. Ry. Co. v. Hughart,* 90 Ala. 36, 8 South. 62; *A. G. S. R. R. v. Little, supra; L. & N. R. R. Co. v. Oden,* 80 Ala. 38; *Steele v. Townsend,* 37 Ala. 247, 79 Am. Dec. 49; *Davidson v. Graham,* 2 Ohio St. 131, and authorities, supra; *City of Norwich,* 4 Ben. 271, Fed. Cas. No. 2761; *Sager v. Portsmouth,* 31 M. E. 228, 1 Am. Rep. 659; *Railroad Company v. Lockwood,* 17 Wall. (U S.) 357, 21 L. Ed. 627. "It must be understood, however, that where the shipper of goods practices a fraud on the carrier, either by his acts or omissions, as to the value of goods, fraudulently concealing their value from the carrier, such fraud operates to discharge the carrier from liability. But a mere failure on the part of the shipper to inform a carrier as to the value of goods shipped would not per se be such fraud as would discharge the carrier. It is the duty of every person sending goods by a carrier to make use of no fraud or artifice to deceive him, whereby his risk is increased or his care and vigilance may be lessened; and if there is such fraud and unfair concealment, it will make the contract a nullity."—*Texas Express Co. v. G. M. Scott,* 2 Willson, Civ. Cas. Ct. App. § 72; *H. & T. C. Railroad Company v. Burke,* 55 Tex. 323, 40 Am. Rep. 808.

The principle above stated with respect of fraud is not invoked by any of defendant's pleas. The demurrer to plea 5 was properly sustained. And there is no error in the rulings of the court with respect to the demurrers to replications to pleas 2 and 7.—*Southern Express Co. v. Jones, supra.* The demurrer to plea 6 was properly sustained on the authority of *Southern Express Company v. Tupelo,* 108 Ala. 517, 18 South. 664. Upon the evidence contained in the record, even if fraud on the part of the shipper had been set up by the pleas in accordance with

the principle above stated, we could not say that the court in rendering judgment for the plaintiff erred

With respect to the nature of the property and its value the plaintiff was the only witness examined, and he testified: "I know the manuscript for the loss of which this suit is brought. There were 400 pages of legal cap paper in it, hand-written (written with pen and ink.) It was bound by a binder whom I had to bind it in a book form. It opened at the end and had a cover on it. In June, 1897, I decided to spend as much time as was necessary in preparing data and in writing the history of the development of South Carolina literature. I went into the libraries all over the state. I studied with older literary men in the state. I had access to the libraries belonging to these men, and can give you the names if you like. In the manuscript I divided the development of literature into five periods—colonial, revolutionary, state's rights, secession, and last quarter of the nineteenth century. I wrote the history of each period, and gave the lines of the representative writers of each period, and I annotated the choicest productions of these representative writers. I gave three years to the preparation of that manuscript. I closed the work in 1900, when I sent it to the school of graduate studies of the Columbia University, my alma mater. I spent most of my afternoons, my time at night, and during most of the time I made repeated trips on Saturday when my college work was over for the week to libraries over the state, and spent as much time in these libraries as I could in order to get back to my work the following Monday morning." After testifying as above, plaintiff was asked by his counsel this question: "From the time and labor devoted by you to the preparation of this manuscript, and the contents of it, the matter contained in it, what would you say was the reasonable value of that manuscript?" Objection was made to the question on the ground that it called for testimony that was incompetent, illegal, and irrelevant. The objection was overruled, and the witness answered: "Five hundred dollars for three years, or fifteen hundred dollars." On cross-

examination plaintiff testified: "It would be hard for me to say what the market value of the package was in open market, other than its value on the subject, as there was no such text-book written. When I speak of this $1,500 valuation I mean it was of that value to me. It is impossible for me to say what the market value of the package was, or what I could have gotten for it in dollars and cents. I never put it on the market as a manuscript, but had arranged to publish it as a text-book. I believe it had a market value, but it was never offered. I could not state any distinct market value, but I believe it had a market value. I do not know what market value it had."

Ordinarily, where property has a market value that can be shown, such value is the criterion by which actual damages for its destruction or loss may be fixed. But it may be that property destroyed or lost has no market value. In such state of the case, while it may be that no rule which will be absolutely certain to do justice between the parties can be laid down, it does not follow from this, nor is it the law, that the plainitff must be turned out of court with nominal damages merely. Where the article or thing is so unusual in its character that market value cannot be predicated of it, its value, or plaintiff's damages, must be ascertained in some other rational way, and from such elements as are attainable.—*Trustees of Howard College v. Turner*, 71 Ala. 429, 46 Am. Rep. 326; *Cooney v. Pullman Car Co.*, 121 Ala. 368, 25 South. 712, 53 L. R. A. 690; *Jonas v. Noel*, 98 Tenn. 440, 39 S. W. 724, 36 L. R. A. 862; *Masterton v. Mayor and Council of Brooklyn*, 7 Hill (N. Y.) 61, 42 Am. Dec. 38; *Sullivan v. Lear*, 23 Fla. 463, 2 South. 846, 11 Am. St. Rep. 388; 3 Sutherland on Damages (3d Ed.) § 919. The case of *Boucher v. Shewan*, cited by appellant, involved the value of pamphlets that had been converted by the defendant. It was insisted that they were such as treated the Christian religion scoffingly, and, therefore, had no literary value. The court said: "Admitting it to be true that the pamphlets are of the character represented, it may be that they can-

[Western Ry. of Ala. v. McPherson.]

not and ought not to be valued as of the value of pamphlets." But there can be no reason why the materials or
paper contained in what are called "pamphlets" may
not be held by the plaintiff as property, independent of
what is printed in them.—14 U. C| C. P 419. This is
no authority for holding that, if the pamphlets had been
legitimate ones, their value to plaintiff as literary productions could not have been assessed. Indeed, the opinion of the court shows that such damages might have
been assessed.

Where the article lost has no market value, the rule
of damages seems then to be its value to the plaintiff;
and in ascertaining this value inquiry may be made into
the constituent elements of the cost to the plaintiff in
producing it.—*Green v. Boston R. Co.*, 128 Mass. 221,
35 Am. Rep. 370; *L. & N. R. Co. v. Stewart*, 78 Miss. 600,
29 South. 394, and authorities, supra. The court seems
to have followed the rule as above stated. The plaintiff
in the case testified to the value, and his was the only
evidence, and we have not been shown that the court
erred in its finding as to the value.—*Cooney v. Pullman
Car Co., supra.*

There is no error in the record, and the judgment must
be affirmed.

Affirmed.

WEAKLEY, C. J., and HARALSON and DOWDELL, JJ.,
concur.