# Alabama Great Southern R. R. Co. *v.* Knox.

## *Loss of Baggage.*

(Decided November 20, 1913.  63 South. 538.)

1. *Carriers; Baggage; Loss; Relation.*—Where a passenger purchased a ticket from one point to another over a carrier's line and checked his baggage thereon, it was not necessary that the passenger should accompany his baggage, either on the same train or at all, in order to create the relation of carrier and passenger with reference to the baggage, so as to render the carrier liable for the loss of same.

2. *Same; Negligence; Immunity From Liability.*—While a carrier may not contract against liability for loss or injury to property resulting from its own or its servant's negligence, it may, by special contract in consideration of reduced freight charges or special concessions agree with the shipper on the value of the goods as a measure of damages, provided the valuation agreed on is not unreasonable; and this is true whether the loss resulted from negligence or not.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by Miss N. L. Knox against the Alabama Great Southern Railroad Company for loss of baggage. Judgment for plaintiff, and defendant appeals. Case

transferred from the Court of Appeals under Acts 1911, p. 450, § 6. Affirmed.

The first count was as follows: "Plaintiff claims of defendant the sum of $500 damages for the failure to deliver certain goods [describing them], which goods were received by defendant as a common carrier to be delivered to plaintiff at Birmingham, Ala., for a reward, which plaintiff failed to deliverer."

Count 2 is the same as 1 and alleges the goods as baggage belonging to plaintiff, which defendant failed to deliver.

Count 3 same as count 1.

The pleas were:

"(1) Not guilty.

"(2) Defendant says that its traffic regulation, the sale of its tickets from Bessemer, Ala., to Birmingham, Ala., and the checking of baggage on such ticket, provides as follows: 'Unless a greater sum is declared by the passenger, according to the forms prescribed by checking carrier, and charges paid for increased valuation at time of delivery to the carrier, or if delivery to the carrier be made at a nonagency station, the value of the baggage or articles belonging to or checked for an adult passenger shall be held to have been declared and agreed by him to be, and shall be deemed to be, not in excess of $100, and the value of the baggage or article belonging to or checked for a child of half-fare age shall be held to have been declared to be and shall be deemed to be not in excess of $50. If passenger at time of checking baggage declares to a station baggage agent, according to the form prescribed by checking carrier, a greater value than $100 for an adult and $50 for a child of half-fare age, each $100 in value, or fraction thereof, above such allowance, will be charged for as per table of excess valuation rates in rule 36 hereof.' And

defendant says that plaintiff checked her said baggage on a ticket bought by her from Bessemer to Birmingham, Ala., of defendant, without notifying defendant that the contents of said trunk checked by her were of the value of more than $100, or otherwise declaring that said value was more than $100, and without paying the extra charge provided for baggage of the value of more than $100, checked on such tickets as above provided in said tariff, wherefore, even if plaintiff be entitled to recover, plaintiff is only entitled to recover the sum of $100.

"(3) Said baggage of plaintiff was checked by plaintiff under and by virtue of a contract contained in a ticket purchased by plaintiff from defendant, and that said ticket provided in substance that defendant, in case of loss or damage to said baggage, should not be liable to plaintiff for more than the sum of $100 for wearing apparel. Wherefore, defendant says that, even if plaintiff be entitled to recover in this case for any sum, she is not entitled to recover for more than the amount of $100 and for said wearing apparel."

Demurrer being sustained to pleas 2 and 3, they were amended by adding at the end of each the following: "And defendant further avers that the said limitation of liability of $100 was not in an amount greatly disproportionate to the damage done to said plaintiff by reason of the loss and injury to said goods."

A. G. & E. D. SMITH, for appellant. The court should have overruled demurrers to pleas 2 and 3 as originally filed.—*So. Ry. v. Jones,* 132 Ala. 437; secs. 5522, 5520, 5523, Code 1907; *Roland v. Logan,* 18 Ala. 307. The Alabama statutes are modelled on the Acts of Congress, and the Alabama Railroad Commission is given the same powers relative to intrastate matters that the In-

terstate Commerce Commission has over interstate matters, and it is not longer necessary to declare that limitations of liability are void or only qualifiedly valid on account of public policy. See cases in Pamphlet No. 6, Lawyer's Co-operative Publishing Company, pp. 148, et seq., and *K. C. S. R. R. Co. v. Carl*, March 10, 1913; and *M. K. & T. R. R. Co. v. Harriman*, same date, decided by U. S. Supreme Court. The lower court should have directed a verdict for defendant as to counts 1 and 3.—*Holland v. So. Ex. Co.*, 114 Ala. 128; 60 N. Y. Supp. 163; 1 Words & Phrases, 663; 46 Am. Rep. 142; 31 Conn. 281; 40 N. W. 364. Defendant was a gratuitous bailee of plaintiff's trunks, and she cannot recover for the loss or damage except upon an averment and proof of gross negligence.—85 N. W. 242; 37 N. Y. 757; 41 Am. Dec. 767; 56 Am. Dec. 460; 93 Am. Dec. 140; 79 Me. 550; 4 Elliott on Railroads, secs. 1652-a, 1656-7.

THOMAS T. HUEY, and SAMUEL T. HUEY, for appellee. There was no error in sustaining demurrers to the pleas as originally filed or as amended.—6 Cyc. 664, notes 17 and 18 in cases cited; *L & N. v. Cowherd*, 23 South. 793; *Broadwood v. So. Ex. Co.*, 41 South. 769; *So. Ex. Co. v. Gibbs*, 46 South. 465. The affirmative charge was properly refused as to counts 1 and 3.— *M. & E. R. R. Co. v. Culver*, 75 Ala. 587; *M. & O. R. R. Co. v. Hopkins*, 41 Ala. 486; *L. & N. v. Landers*, 33 South. 482. Having purchased a ticket and checked the baggage thereon, it was not necessary that plaintiff should have traveled on the same train with the trunk or that she went at all.—81 N. J. L. 571. On these authorities, the court properly instructed the jury.

ANDERSON, J.—While the text-writers have clung to the ancient rule that in order to fix liability upon a

carrier for the loss or destruction of baggage, as a carrier of baggage, as distinguished from a carrier of freight, the owner must stand in the relation of a passenger and must accompany his baggage, and if he does not do so the carrier would under certain circumstances be liable only as a carrier of freight, we think that there is no need for said distinction as the liability is practically the same. The old rule got its origin when travel was such that the owner usually accompanied his baggage, could keep an eye on it, and point it out along the journey, and perhaps at a time when the check system and separate baggage cars were not in vogue, such as stagecoach and steamboat travel, but there is no reason for such a rule in modern times, when the owner can serve no good purpose or aid the carrier in the slightest by riding on the same train with his baggage. Indeed, modern travel has done away with the only sound reason for the old rule, and, with the reason removed, the rule should become obsolete.

Indeed, we are impressed with the soundness of the following quotation, which is a part of the note upon the case of *Marshall v. Pontias, etc., R. R. Co.,* 126 Mich. 45, 85 N. W. 242, as reported and noted in 55 L. R. A. 650: "Whatever reason there may be in a country where baggage is not checked for requiring the owner to go upon the same train with it so as to be able to identify it and claim it as soon as the train stops, such reason is lacking in the United States, where the baggage is checked when taken into the carrier's possession and kept in the carrier's exclusive custody and control until it reaches the destination to which it was checked. Indeed, it is very common now for a passenger to have his baggage checked before it is taken from his own residence and carried over successive lines of railroad and through the hands of various baggage trans-

fer companies without his seeing or knowing, or having any power to see or know, what is being done with it until it reaches the baggageroom at its destination. In addition to this, the carriers frequently refuse to take baggage on trains which carry passengers, and even have printed on their timetables a notice that passengers on those trains must have their baggage carried by some preceding or subsequent train. Under such a practice as this, by which the carrier has absolute charge and authority over the baggage after it has given a check for it until it reaches destination, and also by its own regulation separates the baggage from the passenger so far as to carry it, not only in a different car, but on a different train, it seems impossible to find any reason whatever for a rule which compels the owner of a ticket to get upon the train which carries his baggage and ride in a different car and out of sight and without any right of power even to see his bagage during the journey. While the transportation of baggage was originally a mere incident to the transportation of the passenger and may have then been a mere matter of grace on the carrier's part, the long course and development of the business of transportation seems to have clearly made the transportation of the ordinary amount of baggage a distinct part of the carrier's undertaking. That is to say, the purchase of a ticket is a contract which gives the passenger two distinct rights, one to be carried as a passenger; second, the right to have the usual amount of baggage transported. There seems to be nothing whatever in the modern practice of railroad transportation, with the system of checking baggage, to make it an implied part of the contract that the passenger shall go upon the same train or indeed, avail himself of his right to be carried at all, unless he chooses to do so. Having paid for two priv-

ileges, there is no reason why he should be compelled to avail himself of both or neither, unless the carrier's burden in respect to one of them is increased by his failure to exercise the other. It is not possible to see how this is the case. The carrier's duty with respect to the baggage is in no sense more onerous by reason of the owner's absence from the train. The carrier is, indeed, entitled to have its liability as such terminate within a reasonable time after the journey ends, but this is the same whether the owner has come on the train with it or not."

The foregoing has in part been approved in the case of *McKibben v. Winconsin R. R. Co.*, 100 Minn. 270, 110 N. W. 964, 8 L. R. A. (N. S.) 489, 117 Am. St. Rep. 689. Indeed, the case of *Marshall v. Pontiac, etc., R. R. Co., supra,* the one relied upon by appellant, no longer recognizes the old rule that the owner must accompany his baggage, but does hold, and we think improperly so, that the carrier was but a gratuitous bailee, notwithstanding it got the customary charges for a ticket entitling the owner and his trunk to transportation simply because the owner put upon it only a part of the burden which it had assumed. It is illogical to hold that a carrier which issues a ticket entitling the owner and his baggage to transportation becomes a gratuitous bailee simply because the owner did not intend to, and in fact did not, avail herself of the right to put the entire burden upon the carrier.

As pointed out in the note heretofore mentioned, the case of *Marshall v. Pontiac, etc., R. R. Co.* is not supported by any authorities therein cited or which we have been able to find. Indeed, the only case we have found that seems to cite said case without criticism is the case of *Wood v. Maine R. R. Co:,* 98 Me. 98, 56 Atl. 457, 99 Am. St. Rep. 339, and this case does not fol-

low same, as the facts there were different, and the plaintiff had no ticket over the line upon which the trunk was lost. He had a ticket from Asbury Park, N. J., to Boston, and got his trunk checked through to Wiscosset, Me., a point beyond Boston, and the court properly held that the last line was a gratuitous bailee, as the plaintiff had no ticket over its line, and the proof did not show that he paid the requisite charges for transporting his baggage over the defendant's lines, he having taken a boat from Boston to Bath, and the defendant owed him no duty to transport his baggage from Boston to Wiscosset, Me. It matters not whether the failure of the plaintiff to use the ticket as a passenger rendered the defendant a carrier of her trunk as freight instead of baggage, for, if there is a distinction, it is without a difference, as the duty and liability are the same, and the fact remains that, when defendant's agent sold the plaintiff the ticket to Birmingham, it agreed to transport her and her trunk, one or both, for the price paid, and the fact that the plaintiff did not use the ticket, or did not intend to, did not render the defendant a gratuitous bailee of her said trunk, and the trial court properly refused the general charge proceeding upon this theory of the case.

Whether or not pleas 2 and 3, as last amended, were good pleas, we cannot now determine, as the trial court overruled the plaintiff's demurrers to same, which ruling was favorable to this appellant, and which is not subject to review as there was no cross-appeal by the appellee. We are therefore called on to pass upon the rulings upon said pleas prior to the last amendment; and, as the trial court held the pleas good after the last amendment, we assume that the previous grounds of demurrer sustained were those which superinduced the amendments. That is, that the pleas did not nega-

tive negligence on the part of the defendant, and did not negative the unreasonableness of the contract.

The rule as to the right of common carriers to contract for immunity against liability is laid down by this court in the case of *So. R. R. Co. v. Jones*, 132 Ala. 437, 31 South. 501, wherein it was stated, through McClellan, C. J.: "(1) It is conceived to be settled in Alabama on principles of public policy that a common carrier cannot contract at all for immunity from liability for the loss of or injury to property resulting from his own or his servant's negligence. (2) It is conceived to be settled in this state also that, in consideration of reduced freight charges and the like, the shipper and the carrier may contract that in case of loss or injury, whether resulting from negligence or other cause, the value of the property at the time and place of shipment, not exceeding an expressed sum, shall be the measure of recovery. And (3) it has also been declared by this court that under such contract recovery will be limited to the sum so expressed unless the real value of the property is greatly disproportionate thereto, so much greater than the stipulated maximum of value and liability as to render the contract unreasonable and therefore not binding on the shipper."

As we understand from the foregoing, a common carrier cannot contract for immunity from liability for the loss or injury to property resulting from his own or his servant's negligence but may by a special contract in consideration of reduced charges or special concessions, agree upon the value of the thing shipped as the measure of damages, whether the loss resulted from negligence or not, provided the valuation agreed upon was not such to render the contract unreasonable. The defendant's special pleas 2 and 3, not being in bar but merely in mitigation of damages, would not have to negative neg-

ligence or the unreasonableness of the contract if they set up such a special contract as is covered by the second proposition laid down in the case of *So. R. R. Co. v. Jones, supra,* but said pleas do not set up any special contract as for reduced charges, etc. They merely set up general rules and regulations and a general form or provision printed upon their tickets and do not bring this case within the influence of the *Jones Case, supra.* As to whether or not the pleas would fall under the influence of *Adams Express Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, and other recent cases decided by said court upon the point in question, if this was an interstate shipment, we need not determine, as this is in intrastate matter, and this court has heretofore held that said decisions are not binding upon us and will not be followed.—*A. G. S. R. R. v. McCleskey,* 160 Ala. 630, 49 South. 433.

It is insisted that the defendant was entitled to the general charge, as to counts 1 and 3, because of a variance, in that they claim upon a bill of lading because in Code form No. 15, p. 1197. It is true that the form is styled as being upon a bill of lading, but neither the body of the form nor the counts in question aver the issuance of a bill of lading. As we view this case, there is no difference as to the defendant's liability whether the trunk was received for transportation as baggage or freight.—*M. & E. R. R. Co. v. Culver,* 75 Ala. 591, 51 Am. Rep. 483.

NOTE.—Since the preparation of the foregoing opinion, but before it was considered in consultation, 43 L. R. A. (N. S.) has reached the library, and we have examined the recent case of *So. R. R. v. Dinkins,* page 806, and the note to same. The note refers to some cases supporting the present holding as well as some which seem opposed to same. These latter cases, however, can be

differentiated in fact from the present case, except those which hold that, notwithstanding the requisite fare was paid, the carrier was a gratuitous bailee if the plaintiff did not in fact become a passenger, and we think that this holding is unsound. It may be, from a technical standpoint, that the plaintiff must have at least intended to become a passenger in order to make the defendant a carrier of baggage, but it is unsound to hold that, when the carrier received full fare for the transportation of the plaintiff and her trunk, it was merely a gratuitous bailee simply because the plaintiff did not also make the trip on defendant's train. Nor are we impressed with the reason advanced in some of these cases why the owner should accompany his trunk and be ready to receive it immediately upon its arrival at the end of the journey. Under the modern system of travel he can be of no service to the carrier by going on the same train with his trunk, and a failure to receive it promptly at the destination would not increase the responsibility of the carrier as such, for, whether it be termed baggage or freight, the liability of the carrier would terminate within a reasonable time, and the same would be held as a warehouseman with the right to charge storage, if not removed within a reasonable time.

The case of *So. R. R. Co. v. Dinkins, supra,* involved a relationship fixed by a mileage contract which the court applied and upheld, and we can very easily see why the owner should travel the route taken by his trunk when the same is checked upon a mileage book, as the recall of the mileage is possibly the way in which the carrier gets compensation for transporting the owner and his trunk. In other words, if the trunk is checked upon mileage which is not pulled until the owner takes passage, and he does not take passage but goes to the point to which the trunk is checked by some other way, or

else does not go at all, the carrier would probably transport the baggage for nothing, and a contract or rule protecting it from such an imposition should be upheld by the courts. The case at bar, however, is not a mileage book case, as the plaintiff paid full fare for a ticket which entitled her to the transportation of herself and trunk to Birmingham, and the mere fact that she availed herself of only a part of the burden assumed by the defendant did not render it a mere gratuitous bailee liable only for gross negligence.

The judgment of the city court is affirmed.

DOWDELL, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.