Crout v. Railroad.

CROUT *v.* YAZOO & M. V. R. Co.

(*Jackson.* April Term, 1915.)

1. CARRIERS. Passengers. Loss of baggage. Limitation of liability.

A carrier selling a mileage book at a reduced price may properly make it the basis of a special contract setting forth any reasonable regulations or limitations of liability, and may properly contract on the subject of its liability for baggage carried on trains on which the passenger does not travel, although it would have no right to release itself of the duty to carry a limited amount of baggage free of charge as incidental to the carriage of passenger. (*Post, pp.* 676-678.)

Cases cited and approved: McKibbin v. Railroad, 100 Minn., 270; Railroad v. Knox, 184 Ala., 489; Collins v. Railroad, 10 Cush., 506.

Cases cited and distinguished: Marshall v. Railroad, 126 Mich., 45; Railroad v. Dinkins, 139 Ga., 332.

2. CARRIERS. Passengers. Loss of Baggage.

A carrier selling a 1,000-mile ticket at a reduced price ,and therein stipulating that baggage would be carried only over such lines and between such stations as the purchaser traveled on the day the baggage was presented for checking, would not be released from liability to a passenger who, by accident, did not accompany his baggage, or who lost his baggage in the ordinary incidents of travel, or in cases where there were regular baggage trains, or where the carrier chose not to forward the baggage on the passenger's train. (*Post, p.* 678.)

3. CARRIERS. Passengers. Loss of Baggage.

Under a mileage ticket sold at a reduced rate and stipulating that baggage would be carried only over such lines and between such stations as the purchaser traveled on the day the baggage was presented for checking, the carrier was not lia-

Crout v. Railroad.

ble as a carrier, as distinguished from a warehouseman, for loss of baggage checked on a train on which the passenger did not intend to, and did not, travel, so that there could be no recovery for its loss by the burning of the station without its fault; its liability in such case being only that of a gratuitous bailee. (*Post, pp.* 678, 679.)

4. CARRIERS. Passengers. Loss of baggage. Custody.

Where it was not shown that the carrier or its agents knew of any open and long-continued custom of violating the contract, the fact that some traveling men did not travel on the trains on which they check their baggage did not invalidate the express stipulation in the ticket contract that the plaintiff, a traveling man, should travel between the same points and on the same day of the checking of his baggage. (*Post, pp.* 679, 680.)

5. CARRIERS. Passengers. Loss of baggage.

A passenger holding a mileage ticket sold at a reduced rate and stipulating that he should travel between the same points and on the same day of the checking of his baggage could not rely upon a waiver of the stipulation merely by a statement to a third person of his intention not to accompany his baggage, made when he was having it checked, and within hearing of the carrier's agent. (*Post, pp.* 680, 681.)

Cases cited and approved: Railroad v. Fidelity Co., 125 Tenn., 676; Railroad v. Naive, 112 Tenn., 239; Pencil Co. v. Railroad, 124 Tenn., 65.

6. CARRIERS. Passengers. Loss of baggage.

Code Miss. 1906, sec. 4068, requiring every railroad to receive any trunk or baggage which its regulations allowed to be carried with every passenger, offered in person upon exhibition of a ticket over the road, and to issue a check, and upon arrival to safely keep the baggage at the station until demanded by the owner, with the right to charge a reasonable storage after four days, did not conflict with a mileage ticket provision that baggage would be carried only over such lines and between such stations as the purchaser traveled on the day the baggage was checked. (*Post, pp.* 681, 682.)

Crout v. Railroad.

FROM SHELBY.

Appeal from the Circiut Court of Shelby County.— H. W. LAUGHLIN, Judge.

CLINTON McKAY, CHAS. U. BURCH and H. D. MINOR, for appellant.

McKELLAR & KYSER, for appellee.

MR. JUSTICE FANCHER delivered the opinion of the Court.

This is a suit to recover the value of a trunk and its contents shipped as baggage by O. A. Crout, a traveling salesman, over the Yazzo & Mississippi Valley Railroad, and which was lost by fire in the burning of the depot of the Yazoo & Mississippi Valley Railroad at Cruger, Miss.

Mr. Crout was using a mileage book calling for 1,000 miles, for which he paid $20. On January 1, 1913, he was at Thornton, Miss., and intending to be in Cruger, Miss., the next day, but; not intending to go there that night, he had his trunk taken to the depot of the company at Thornton, and there had it checked by the agent from Thornton to Cruger. It was his intention at the time to go south to Yazoo City, spend the night, and return to Cruger the next morning on another and different train from the one that carried his baggage from

Thornton to Cruger. He did not tell the agent who checked his trunk that he was not going with it on the train to Cruger.

It is about eighteen or twenty miles from Thornton to Cruger. Thornton is a place of 150 inhabitants, with three or four stores. Cruger is a town lying north, with some 300 or 400 inhabitants, and possessing several stores and a hotel. The train which carried the trunk from Thornton to Cruger was due to pass the former place between six and seven o'clock p. m. A train went south from Thornton to Yazoo City, which is on the same road, between six and seven o'clock p. m., and when this train reached Thornton, Crout, in company with another traveling man, boarded it, and went to Yazoo City, spent the night there, and the next morning got on one of defendant's passenger trains at that point and went through Thornton to Cruger, reaching that place between nine and ten o'clock a. m. The trunk had reached Cruger about nine o'clock the night before, and was placed on the platform of the depot, and shortly afterward was put inside the building; no one calling for it. The depot was new, and had a slate roof. The agent of the company at Cruger was in his office in the depot, together with the porter, until about ten o'clock that night after the trunk was put in the building. The next morning between five and six o'clock, without the fault of the defendant railroad or any of its servants, the depot was destroyed by fire, and the trunk burned up.

Crout v. Railroad.

The question is whether the railroad company is liable as a carrier for the loss of this baggage; it being conceded that there is no liability if it was merely a warehouseman.

The 1,000-mile ticket was sold at a reduced price under the ordinary fare, and, by stipulations of contract on its face, entitled the holder to transportation of baggage, limiting the size and weight, and providing that:

"Baggage not exceeding 150 pounds in weight will be checked free. Baggage weighing in excess of said free allowance will be subject to regular excess baggage charge. Baggage may be shipped not exceeding $100 in value. Baggage shall be offered for transportation and will be transported only over such lines and between such stations as purchaser of this ticket will travel on day the baggage is presented for checking."

It is insisted by the railroad company that under this contract it is not liable for the loss of the baggage, because plaintiff did not travel over the line and between the stations on the day the baggage was presented for checking and as provided for in the contract.

Independent of contract on the subject, there is a conflict of authorities as to the liability of a carrier when a passenger does not accompany his baggage; some holding that in such case the carrier is a gratuitous bailee.

It is said in Hutchinson on Carriers (3 Ed.), section 1274:

"The owner of property must, of course, stand in the relation of a passenger to the carrier in order to fix upon it liability as a carrier of baggage. The baggage is

*ex vi termini,* incidental to the carriage of the owner as a passenger. If, therefore, that which would have been properly baggage had it been accompanied by the owner as a passenger should, by accident or mistake, be accepted by the carrier for transportation without being accompanied by the owner, and when he is not, or does not, become a passenger, the carrier would not have it in his custody in the character of baggage, and would not be responsible for it as such.''

It is said in Elliott on Railroads, vol. 4, section 1652a:

''Where a carrier receives baggage with the understanding that it will go forward as the baggage of a passenger, but it does not intend to, and does not in fact, accompany it, the carrier is liable only as a gratuitous bialee, and if a carrier deposit it in an ordinarily well-constructed baggageroom with doors and windows closed in the ordinary manner, it is not liable for its loss by reason of its theft by one whose felony effects an entrance by breaking a pane of glass in one of the windows.''

In 6 Cyc. p. 670, it is said:

''Delivery must be with the intention to become a passenger.''

It is also said in Hutchinson on Carriers (3 Ed.) section 1275:

''Where the owner of goods who has secured the right to be carried as a passenger tenders goods as baggage, and the carrier, believing that they are to be accompanied by him, accepts them as such, he will thereby incur with respect to their safety the responsibility of a

gratuitous bailee only, if through no fault of the carrier the owner does not become a passenger upon the train upon which they are taken.''

It is said by Hutchinson on Carriers, section 1275:

'' When the baggage is accompanied by the owner, as the carrier has the right to expect will be the case, emergencies may arise in which his care and attention to it may preserve it from loss; and, when the journey has been safely made, the carrier may at once deliver to him his baggage, instead of being obliged to keep it for him, and thereby prolong its responsibility.''

In *Marshall* v. *Railroad*, 126 Mich., 45, 85 N. W., 242, reported in 55 L. R. A., 650, the court said:

''One who purchases a railroad ticket for the sole purpose of checking his baggage upon it, with the intention of going to his destination in his private conveyance, can hold the carrier liable only as a gratuitous bailee of the baggage, and cannot recover in case it is stolen from the baggageroom, unless the carrier is guilty of gross negligence.''

The annotator of that case, in his notes in L. R. A., takes issue with the court upon the subject, and expresses surprise that a railroad company should not be held liable when baggage is regularly checked to point of destination on the request of one who has a valid ticket for that journey, though he does not choose to use the ticket by riding upon the cars, and cites a number of authorities sustaining his views. This writer sees no reason for requiring that a passenger accompany the baggage upon the same train with it so as to be able to

131Tenn43

identify it and claim it as soon as destination is reached, in view of the modern developments of baggage transportation in this country, where the baggage is checked when taken into the carrier's possession, and kept in the carrier's exclusive custody until it reaches its destination. This annotator holds that the decision in *Marshall v. Railroad,* supra, is based on the theory of the relation of baggage to the passenger, which does not at all fit the modern practice of railroad transportation in this country, though it is consistent with the usages of carriers of earlier times.

The supreme court of New Jersey adheres to the views expressed by the annotator in the above Michigan case, and, while conceding that many of the older authorities hold that the plaintiff must accompany his baggage in order to charge the company as the carrier of the baggage; that the methods of railroad transportation of baggage have greatly changed of late years, even to the extent of running trains exclusively for baggage, especially at certain seasons, so that a passenger has no assurance whatever that his baggage will go on the same train as that which he takes himself, even when checked in due season for that purpose. To the same effect is *McKibbin* v. *Wisconsin Railroad Co.,* 100 Minn., 270, 110 N. W., 964, 8 L. R. A. (N. S.), 489, 117 Am. St. Rep., 689, and *Railroad Co.* v. *Knox,* 184 Ala., 489, 63 South., 538, 49 L. R. A. (N. S.), 411.

The court in the latter case held that the old rule got its origin when travel was such that the owner usually accompanied his baggage to keep an eye on it and point

it out along the journey, and perhaps at a time when the checking system was not in vogue, but that there is no reason for such a rule in modern times, when the owner can give no aid by riding upon the same train with his baggage.

The supreme court of Massachusetts, in *Collins* v. *Railroad*, reported in 10 Cush., 506, a case where the passenger did not go upon the same train with his goods, held that the railroad company was not liable for their loss by theft after they had been checked by it, and the court said:

"It is easy to perceive that the omission of the plaintiff to accompany them, as he informed defendants that he should, contributed materially to the loss, and that what might have been a very proper and siutable disposition of them at the station at Lawrence, under the reasonable belief that the owner was present to take charge of them, might have been one of hazard and exposure to loss in his absence."

Without multiplying authorities upon the lines above indicated, it is readily seen that there is very respectable authority for the ancient doctrine of nonliability of a carrier of baggage when the passenger does not accompany his goods so that he may be able to see after them, even in modern times, and that there is also a strong line of authorities modifying this old rule and holding that it is not necessary for a passenger to accompany his baggage upon the same train. And some cases even go to the extent to hold that, if a passenger pays for his own transportation and checks his bag-

gage, it is immaterial to the railroad whether he ever makes the trip as a passenger or not.

The above authorities are cited, not to indicate the views of this court as to the divergence of opinion, but rather to lead up to and shed light upon the discussion bearing more directly on the present case. The authorities hereinbefore quoted refer to cases where there is no contract upon the subject, and they reflect the views of courts treating of the question in the absence of any contractual obligation in that respect.

In the present case there is a contract which fixes the rights and liabilities of the parties. This 1,000-mile ticket was sold to Crout at a reduced price, and therefore may properly be the basis of a special contract setting forth any reasonable regulations or limitation of liability. Upon this special consideration it was proper for the parties to enter into a contract upon the subject.

The holding of the supreme court of Georgia in the case of *Railroad* v. *Dinkins,* reported in 139 Ga., 332, 77 S. E., 147, 43 L. R. A. (N. S.), 806, was based on facts very similar to this case; the mileage ticket seems to have been identical. That court made the following statement of its views upon a special contract such as the one here involved:

"From a careful examination of the authorities and the underlying principles we deduce the rule to be that the transportation of baggage is incidental to the relation of passenger; that, whether the baggage is checked on a trip ticket or a mileage ticket, in the absence of a contrary contractual stipulation, the passenger is not

Crout v. Railroad.

bound to travel on the same train which carries his baggage, if he uses the mileage or ticket on the same line of the carrier's road, within such space of time after the checking of his baggage as to indicate that the checking of the baggage and the travel relate to the same journey. But, where the carrier and the purchaser of the ticket contract, with relation to the purchase of a mileage ticket, that baggage will be transported 'only over such lines and between such stations as purchaser of this ticket will travel on date baggage is presented for checking,' the contract controls; and if, in violation of the contract, the purchaser of the ticket intentionally fails to travel on the same day with his baggage, and the baggage is lost, the liability of the carrier is that of a gratuitous bailee."

We are of opinion that the Georgia court lays down the correct rule that the transportation of baggage is incidental to the relation of passenger. Shipment of baggage is not like the shipment of ordinary freight. When ordinary freight is shipped a charge is made for that transportation alone; whereas, in the carriage of baggage, the consideration for the transportation of a passenger is likewise a consideration for a certain amount of free baggage transportation. Baggage is carried incidental to the carriage of a passenger. In granting this free carriage of baggage a public carrier has the right to make reasonable rules and regulations so long as the same are not contrary to the duties of the carrier as established governing the carriage of baggage.

It has become a part of the fixed duty of carriers of passengers, by a long-continued custom to that effect, to also carry a limited amount of baggage free of charge. A carrier would have no right by contract to release itself of that duty, so long established by custom that it has become a law.

We think, furthermore, that if by accident a passenger should not accompany his baggage, or if he and the baggage should become separated by the ordinary incidents of travel, a contract such as is here presented could not release the carrier of its liability in case of loss during carriage. And in cases where there are regular baggage trains, or where the carrier itself of its own choosing does not ship the baggage on the same train with the passenger, we think there should be no release of liability.

But in a case like the present one, where the purchaser of a ticket by intention refused to comply with the contract, and to travel on the same train with his baggage, and the same was lost, there could be no liability as a carrier. The liability in such case is that of a gratuitous bailee. The railroad had a right to stipulate that the passenger should travel upon the same day and make the same trip, so that, in point of fact, the carriage of the baggage would be incidental to the carriage of the passenger. A carrier has the right to anticipate the probability that a passenger will remove his baggage when it reaches its destination, and thereby terminate all liability, and in view of that probability a contract may be made, as in the case here, providing

that the passenger shall travel on the same day of the checking of this baggage.

From this case it appears that drummers frequently remove their baggage from the depot upon arriving at Cruger on the night train. There were trucks on hand which were used for carrying trunks to storehouses, and in some cases baggage was taken to the hotel. Crout states that if he had gone from Thornton to Cruger that night that he would not have taken his trunk out of the depot, and it is insisted that the baggage would have been lost anyway, so that there was no materiality in his going upon the same train. This statement was made after the loss, and was probably only his view at that time as to what he would have done, looking back on the transaction. However that may be, the railroad had the right to contract upon the chance of his removing his baggage, and, having done so, the willful failure of Crout to accompany it rendered the railroad only liable as a gratuitous bailee, and not as an insurer of the value.

It is next insisted by the plaintiff in this case that there was a custom among traveling men to violate the stipulations of this contract, and that in many instances persons did not travel with their baggage upon the same day; that they would check their baggage to the next town where they were going to work, and, if the hotel accommodations were poor or lacking, that they would go to a near-by town having a good hotel and remain over night, and then double back over the same line the next day; and also that there was a custom

among traveling men over defendant's roads to leave their sample trunks in the depot overnight when they arrived in a town after dark and after business hours.

The proof does not show the extent of this alleged custom. The fact that some traveling men did leave their trunks in the depot overnight would not render invalid the express stipulation in the contract requiring that the passenger should travel between the same points and on the same day of the checking of his baggage, because the railroad had the right to rely upon the probability of the baggage being taken from the depot. It is not shown that there was such open, notorious, and long-continued custom of violation of this contract as to presume a knowledge and waiver of it by the railroad. It is not shown that the railroad or its agents knew of any such custom. The fact that the printed contract was placed upon the face of the mileage book shows that the railroad relied upon the stipulations therein contained. This contract was accepted by the passenger, and, if he did not read its contents, notice was nevertheless given him and it was his duty to know the provisions contained in his ticket procured at reduced fare. Therefore the alleged custom has nothing to do with the contract.

It was also stated by the plaintiff that he remarked to another gentleman his intention not to accompany the baggage at the time he was having it checked, and of his intention to spend the night at Yazoo City, and going on to Cruger the next day, and that this statement was made near and within the hearing of the railroad

agent.   The agent says that he heard no such state-
ment, and that, if he had, he would not have checked the
baggage.   Whether that be correct or not, the passen-
ger could not rely upon a waiver of the written contract
in his ticket merely by a statement to that effect in the
presence of the agent.   *Railroad Co.* v. *Fidelity Co.,* 125
Tenn., 676, 148 S. W., 671; *Railroad* v. *Naive,* 112
Tenn., 239, 79 S. W., 124, 64 L. R. A., 443; *Pencil Co.* v.
*Railroad,* 124 Tenn. 65, 134 S. W. 613, 32 L. R. A. (N.
S.) 323.

It is further insisted that, under section 4068 of the
Mississippi Code of 1906, the railroad was liable for
this trunk as a carrier after it was stored as baggage.
This statute provides that it shall be the duty of every
railroad company to receive any trunk or baggage
which the regulations of the company allow to be trans-
ported with every passenger offered in person upon his
exhibiting a ticket over the road of the company, im-
mediately upon receiving the trunk or baggage, to issue
to the owner a check for the same, and upon arrival of
the train to which the trunk or baggage is checked to
put it off at a reasonably convenient place to be pro-
vided for the deposit of baggage; and it is the duty of
the railroad company to safely keep the trunk or bag-
gage at the station until the owner thereof or his agent
shall demand the same, provided that after four days
the company should have the right to charge and collect
a reasonable storage for the same.

This statute does not in any way conflict with the ex-
press contract involved in this suit.   It is made the

duty of the carrier to safely keep the baggage upon its arrival at destination, and it cannot charge storage until the expiration of four days. This statute does not make the railroad responsible as a carrier after the act of carriage has ceased, but only requires the safe-keeping of the baggage, and that no storage shall be collected until the expiration of four days.

The trial court gave judgment in favor of the plaintiff, Crout. The court of civil appeals held that peremptory instructions should have been sustained on the trial of this case in favor of the railroad company, and reversed the circuit court, and dismissed the suit.

In the foregoing opinion we have not undertaken to follow each assignment of error in its regular order, for the reason that it was more orderly to treat of the questions raised in the manner pursued by us.

It results therefore that there is no error in the judgment of the court of civil appeals, and the same is affirmed.