# Louisville & Nashville R. R. Co. *v.* Dickson, *et al.*

### Damage for Injury to Dog.

(Decided December 19, 1916.   Rehearing denied January 9, 1917.
73 South. 750.)

1. **Damages; Market Value; Place.**—Where there is no market value for the property in question at the place at which the injury occurred, fixing the damages for its loss or injury under the general rule, it is competent to show the market value at other places, with cost of transportation, or other fact, to enable the jury to deduce the value at the place of the injury.

2. **Same.**—Where it is clear from the evidence that there was a market value at the place where the injury occurred, then evidence of the market value of the property at other places is not admissible.

3. **Same.**—The evidence examined and held not clearly to show a market value for the property at the place where it was injured, and so to render admissible proof of the market value at the nearest market.

4. **Trial; Reception of Evidence; Objection.**—Where the evidence is not subject to the only objection which was interposed, it was not error to admit the evidence.

5. **Evidence; Expert; Hypothetical Question.**—Where the action was for the loss by poisoning in transit of hunting dogs, a question to a doctor, "If an animal is affected with the symptoms you have enumerated, and seven of them died during a period of from four hours to a period of two to three days, what would you say was the cause of their death?" and his reply, "I think it was arsenic poisoning," were proper, as the question was supported by the evidence adduced, and the answer was responsive.

6. **Trial; Reception of Evidence; Motion to Exclude.**—Where no objection was interposed to a hypothetical question asked a medical expert, it was not error for a trial court to overrule a motion to exclude his answer.

7. **Evidence; Opinion; Conclusion.**—Where the issue was whether or not the dogs were poisoned before or after their delivery to defendant for carriage, the question to the telegraph operator of defendant whether after the dogs were put in the baggage room there was opportunity for anyone to administer poison to them, was not proper since his testimony showed that the baggage room was open to the public, and he was not in the baggage room all the time; his answer amounting to no more than a surmise or guess upon an issue which was for the jury.

8. **Action; Contract or Tort.**—Where the owner of dogs paid for transportation for himself and excess baggage upon the dogs, he could sue the railroad company either in contract or in tort for loss by death from poisoning of the dogs so checked; the contract being for the sole benefit of such owners insofar as the railroad's liability for the dogs was concerned.

9. **Carriers; Passengers; Baggage.**—The undertaking to carry the passenger is separable from the carrier's undertaking to carry dogs checked by such passenger.

[Louisville & Nashville R. R. Co. v. Dickson, et al.]

10. **Same.**—Where one of two joint owners of hunting dogs was authorized·to act for the other, and purchased tickets for transportation, of the party and their dogs, the railroad was liable to both owners for loss or injury to such dogs.

11. **Same; Baggage; Custody.**—Where the owner of baggage does not deliver it to the carrier but retains it in his custody, he assumes the responsibility, and cannot hold the carrier liable for the loss of it, unless the loss occurred from the negligence or fault of the carrier, in which event the carrier is liable as an ordinary bailee for hire, and not as a common carrier.

12. **Same; Instructions.**—In such an action, a charge to find for defendant in case the servants of plaintiff were left in charge of the dogs, with instructions to look after the dogs after their delivery to the carrier, relieved the carrier from liability notwithstanding the carrier's servants were negligent in respect to the protection of its custody, and was properly refused.

13. **Same; Damages.**—In such an action an instruction limiting recovery to nominal damages was properly refused as there was evidence showing the market value of the dogs at the point of destination.

14. **Appeal and Error; Assignment of Error; Waiver.**—Where the brief insisted merely that the great weight of testimony was in favor of defendant, and the court erred in refusing to grant defendant's motion for a new trial, the assignment of error as to new trial will be treated as waived, since the treatment of the assignment did not rise to the dignity of an argument.

15. **Carriers; Passengers; Baggage.**—Where the action was for damages for the poisoning of hunting dogs after they were checked as baggage, it was no defense that one of the owners was absent when the tickets were purchased by the others, and that therefore the absent ownr was not a party to the contract, since the purchasing owner acted for the other.

APPEAL from Lowndes Circuit Court.

Heard before Hon. A. E. GAMBLE.

(This cause was reviewed by the Supreme Court on certiorari to the Court of Appeals, and the writ was denied. See *Ex parte L. & N. R. R. Co. v. Dickson, et al.,* 74 South. 1005.)

Action by R. S. Dickson and another against the Louisville & Nashville Railroad Company, for damages for the death of certain doys. Judgment for plaintiffs, and defendant appeals. Affirmed.

It appears from the evidence that plaintiffs were going from Bay Minette to Tyson, Ala., upon a hunting expedition, and, having purchased tickets for themselves, delivered 16 dogs, hounds, to defendant to be transported on the same train with them from Bay Minette to Tyson; that after they were checked, and while in the depot at Bay Minette, and on the train, they became sick and 5 died. Dr. Haygood, having testified that he had practiced medicine for nine years, was asked the question:

"If an animal is affected with the symptoms you have enu-

merated, and seven of them died from a period of four hours to a period of two or three days, what would you say was the cause of their death?"

The witness answered: "I think it was arsenic poisoning." The court overruled the motion to exclude the answer, and defendant excepted. The witness Levine is a telegraph operator of the Louisville & Nashville Telegraph Company at Bay Minette, and, after testifying that he was not in the baggage-room all the time, but was in there several times after the dogs were put in there, he was asked by defendant if, after the dogs were put in there, any one had any opportunity to administer any poison, or anything of that sort to them in the baggageroom.

The following charges were refused to defendant:

(10) If, after the dogs were delivered to defendant and checked, you are reasonably satisfied that they were left in charge of Lord or Ed Reese and Will Sager, or either of them, by plaintiffs, or either of them, with instructions to look after them, and they took charge of the dogs under such instructions, and that the dogs were in their charge at the time they were injured, your verdict should be for defendant.

(11) In no event, if you believe the evidence, are plaintiffs entitled to recover more than nominal damages.

JONES, THOMAS & FIELDS, and POWELL & HAMILTON, for appellant. LEADER & EWING, for appellee.

BROWN, J.—(1, 2) Where the evidence shows that there is no market value of property in question at the place which under the general rule governs in fixing the damages for its loss or injury, it is permissible to show the market value at other places, "with cost of transportation or other facts that will enable the jury to deduce the value at the place in question." However, evidence of the market value at other places than the places usually governing in such matters is not admissible where the evidence is clear that there is a value at that place.—*Comer & Co. v. Way & Edmundson,* 107 Ala. 310, 19 South. 966, 54 Am. St. Rep. 93; *Johnson & Thornton v. Allen & Jemison,* 78 Ala. 392, 56 Am. Rep. 34.

(3, 4) The record (page 17) recites that, plaintiff's witness George McCurdy "being asked to state the market value of the five dogs about which he had been testifying as compared with

the others at Tyson on November 22, 1913, the witness answered that the only way he could figure the value was what anything would bring on the market, and the dogs that he named there would have probably brought $100 apiece on that date, and he thought $50 apiece would have been a market value for the other three dogs, Rock, Grace, and Henry."

This testimony was given without objection; and, while it tends to show the market value of the dogs at Tyson, there was other evidence that the dogs had no market value at Tyson. Therefore it cannot be said that the evidence is clear that the dogs had a market value at Tyson; and, under the rule stated above it was the plaintiff's right to make proof of the market value of the property at the nearest market to Tyson.—*Johnson & Hubbard,* 69 Ala. 379. And while it was incumbent on the plaintiff to go further and show the cost of transportation from Tyson to Prattville, the evidence was not irrelevant to the issues in the case; and, this being the only objection urged, the ruling of the court on the objection interposed was correct.—*McDaniel v. State,* 97 Ala. 14, 12 South. 241.

(5, 6) The hypothetical question to the witness Dr. Haygood was supported by the testimony that had been adduced, and his answer was responsive.—Jones on Evidence, §§ 370-374. Furthermore, there was no objection interposed to the question, and it was not error for the court to overrule the motion to exclude the answer.—*Yolande Coal Co. v. Norwood,* 4 Ala. App. 390, 58 South. 118.

(7) The litigated fact in the case was whether the dogs were poisoned before or after they were delivered to the defendant and accepted by it. This necessarily involved the inquiry as to whether the circumstances and the conduct of the defendant's servants were such as to afford an opportunity to any one so disposed to administer poison to the dogs without being detected. This was one of the questions for the jury to solve, and it was not error for the court to sustain the objection to the question propounded to the witness Levine. In view of the testimony of this witness showing that the baggageroom was open to the public and the witness was not in the baggageroom all the time, but that he was engaged otherwise, the answer to the question would have amounted to a surmise or guess, and the objection was properly sustained and the question left to the jury.—*Brandon v. Progress Distilling Co.,* 167 Ala. 365, 52 South. 640. Further-

more, he was allowed to testify that, so far as he could see, nothing was given to the dogs after they were put in the baggage-room.

(8-10) The evidence shows without dispute that the plaintiffs owned the dogs in question; that they were partners in their ownership; that McCurdy purchased and paid for all of the tickets and paid the excess baggage; that these tickets and the payment of the baggage was for the transportation of the entire party who had accompanied the plaintiffs on a hunting expedition.; that the contract, so far as it relates to the liability here involved, was for the sole benefit of the plaintiffs, the owners of the dogs. Hence they may sue either ex contractu or ex delicto for their loss.—*McGehee v. W. U. Tel. Co.*, 169 Ala. 109, 53 South. 205, Ann. Cas. 1912B, 512. The undertaking to carry the dogs is separable from the undertaking to carry the party.—*A. G. S. R. R. Co. v. Knox*, 184 Ala. 485, 63 South. 538, 49 L. R. A. (N. S.) 411. In the case just cited, the court said: "It matters not whether the failure of the plaintiff to use the ticket as a passenger rendered the defendant a carrier of her trunk as freight instead of baggage, for, if there is a distinction, it is without a difference, as the duty and liability are the same, and the fact remains that, when defendant's agent sold the plaintiff the ticket to Birmingham, it agreed to transport her and her trunk, one or both, for the price paid, and the fact that the plaintiff did not use the ticket, or did not intend to, did not render the defendant a gratuitous bailee of her trunk."

When we apply the reasoning in that case to this, the result is that, when the defendant's agent sold McCurdy the tickets, it agreed to transport the party and the dogs, and McCurdy having, by his relation with the plaintiff Dickson, authority to act for him in the transportation of the dogs, the liability for their loss, if liability there was, is to the plaintiffs.

(11, 12) If the owner of baggage does not deliver it to the carrier, but retains it in his custody "he thereby assumes the responsibility, and cannot hold the carrier for the loss of it, unless the loss occurs from the negligence or fault of the carrier, in which event he would be liable, not as a common carrier, but as an ordinary bailee for hire."—1 Hutchinson on Carriers, § 109.

[Louisville & Nashville R. R. Co. v. Dickson, et al.]

"In such case the owner, so far from having made delivery to the carrier, has purposely withheld it. He has not trusted the carrier, and where there has been no trust reposed, there can be no liability; for trust is the very basis of liability."—1 Hutchinson on Carriers, § 110.

Charge 10, refused to the defendant, does not assert this proposition. It asserts: "If after the dogs were delivered to the defendant and checked," the jury were reasonably satisfied that plaintiff's servants were left in charge with instructions to look after the dogs, and took charge of them under such instructions, then the defendant was not liable. The charge assumes that the facts hypothesized, although the dogs had been delivered to the defendant and accepted by it, would deprive the defendant of its custody and relieve it from any duty in the premises, notwithstanding its servants were negligent in respect to the protection of its custody and as a proximate consequence the injury occurred. The charge was properly refused.

(13) The testimony of the witness George McCurdy hereinabove quoted tends to show the market value of the dogs at Tyson; and, in view of this evidence, charge 11 was properly refused.

(14) The insistence, in brief, relating to the refusal of a new trial is: "The great weight of the testimony was in favor of the defendant, and the court below erred in refusing to grant defendant's motion for a new trial."

This, under the repeated rulings of the Supreme Court, does not "rise to the dignity of an argument," and will be treated as a waiver of the assignment of error.—*Georgia Cotton Co. v. Lee,* 196 Ala. 599, 72 South. 158; *Republic Iron & Steel Co. v. Quinton,* 194 Ala. 126, 69 South. 604; *W. U. Tel. Co. v. Benson,* 159 Ala. 254, 48 South. 712.

We have treated all questions argued, and, finding no error in the record, the judgment of the circuit court will be affirmed.

Affirmed.

### ON REHEARING.

(15) The appellant, in the brief and argument filed on submission, insisting that the court erred in refusing the affirmative charge as to the first count of the complaint, requested by it, says: "There is no testimony whatever to sustain the averments

of this count. It cannot be contended that the plaintiff R. S. Dickson was a party to any contract, as he was not there at the time the tickets were purchased, but had gone home two or three days before."

As said in the original opinion, the evidence shows that McCurdy and Dickson were joint owners of the property involved in this suit; that McCurdy bought all the tickets and arranged for the transportation of the dogs, and in so doing acted for himself and his copartner in the ownership of the dogs; and in legal effect the contract for the transportation of the dogs was with the plaintiffs or for their sole benefit, and they were authorized to sue for its breach of duty growing out of the contract.

As we understand appellant's insistence on the rehearing, it is that the averments of the first count import a special express contract for the carriage of the dogs, and that the only contract shown was one implied by law from the transaction. This contention is too technical. When the language of the complaint is subjected to a reasonable construction, we hold that it avers in legal effect that the defendant undertook to transport the plaintiff's dogs and to exercise reasonable diligence in their transportation and in protecting them from injury; that the evidence tends to support the count; and therefore the affirmative charge as to this count was properly refused.

The other points urged in brief are disposed of in the original opinion.

Application overruled.