**PAYNE, Agent, v. BOSWELL et ux.**
**(No. 2544.)**

(Court of Civil Appeals of Texas. Texarkana. April 26, 1922. Rehearing Denied May. 4, 1922.)

1. **Carriers** ⬅═397½—**Carrier liable for loss of baggage, though not accompanied by passenger.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6618, requiring a carrier to carry baggage for the consideration paid when a passenger buys a ticket, where a passenger bought a ticket and checked a trunk, the carrier was liable for its loss, though the passenger did not use the ticket.

2. **Carriers** ⬅═400—**Carrier held not relieved from liability for excess value of trunk, by failure to declare it when checked.**

Where a passenger checked a trunk and offered to declare its value as being more than $100, according to the carrier's rules but, owing to the fact that the proper agent was not present, consented to declare the excess value at the end of the route and to pay the scheduled rate and offered to pay the excess charge before suing for its loss, the carrier was not relieved from liability for the excess value, because of plaintiff's failure to declare it when the baggage was checked.

3. **Appeal and error** ⬅═1041(5)—**Overruling exception to supplemental pleading charging conversion held, if error, harmless.**

Where the owner of a trunk, carried as baggage, sued a carrier for breach of contract to deliver at its destination, overruling the carrier's exception to a supplemental petition, charging the carrier with conversion of the trunk and its contents, in view of testimony sufficient to support the finding that the carrier was guilty of conversion of the trunk and its contents, was, if error, harmless.

Appeal from District Court, Tarrant County; Ben. M. Terrell, Judge.

Action by A. V. Boswell and wife against John Barton Payne, Agent. From judgment for plaintiffs, defendant appeals. Affirmed.

Appellees' suit against appellant was for the value of a trunk and its contents (alleged to be $1,047.25) carried from Memphis to Childress, over the Fort Worth & Denver City Railway, while it was operated by the Director General of Railroads.

In their original petition, appellees alleged that they purchased tickets of the carrier, entitling them and their baggage to be carried over said line of railway from Memphis to Childress; that they delivered the trunk in question to the carrier to be so carried, and that the carrier then issued and delivered a check therefor to them; that it thereupon became the duty of the carrier to safely transport the trunk and deliver same to them at Childress, "and they agreed so to do"; that the carrier "did not safely carry and transport said trunk, as it was legally bound to do in pursuance with this agreement so to do"; that they, "within due time," made demand upon the carrier for delivery of the trunk; and that the carrier "wholly failed and refused" to deliver same to them.

In his answer to said petition, appellant alleged, as a bar to the recovery sought by appellees, matters as follows: (1) That, at the time the carrier undertook to transport the trunk, as alleged by appellees, the United States Railroad Administration had on file with the Interstate Commerce Commission "its certain tariff and regulations regulating the carriage of baggage," which provided that "baggage checks were only to

---

be issued when the owner of the property is also the owner of the transportation, and is a bona fide passenger over the same line to or beyond the destination of the baggage"; and that appellees "were not bona fide passengers, in that they were not transported over the lines" of the carrier "between the points which the baggage was checked and on the ticket on which the baggage was checked." (2) That, when appellees "purchased the ticket in question" and checked the trunk, "they agreed and contracted to become bona fide passengers," and that, in checking the trunk, the carrier relied on their undertaking to do so, but that appellees "wholly failed to comply with the agreement to become passengers on said train, between the points covered by the ticket." (3) That said tariff and regulations also provided that, "unless a greater sum was declared by a passenger, and charges paid for excess value at the time of delivery to the carrier, that the value thereof should be deemed and agreed to be not in excess of $100"; that appellee "declared no excess value and paid no excess charges"; and that appellees therefore were not entitled to recover a sum in excess of $100 as the value of the trunk and its contents.

In a supplemental petition, appellees alleged, among other things, (1) that it was their intention "to become a passenger" at the time they purchased the ticket and checked the trunk, but that they determined afterward to go, and did go, to Childress by automobile; (2) that, at the time they presented the trunk to the carrier's agent at Memphis, for carriage to Childress, they were "willing and ready and wanted to pay any sums that might be due for excess in baggage or excess in valuation," and offered to do so, when they were informed by said agent that the excess baggage could be paid for at Childress, and that he (the agent) "did not know anything about the excess charges for additional or excess valuation, and that the man who attended to that was not in, and that he was unable to accept any charges for excess valuation"; that, if said agent had then informed appellees as to the amount of charges for excess valuation, they would have declared the value of the trunk and its contents to be $1,047.25 and would have paid whatever excess charges it was necessary for them to pay; and that, because of the facts stated, appellant was estopped from claiming he was not liable as claimed by them; (3) that—

"irrespective of the contract of carriage or otherwise upon which said baggage was checked, and irrespective of the provisions in the tariffs, plaintiffs allege that said baggage was received and accepted by defendant and that plaintiffs have often demanded the return of said baggage to them, which has been refused by defendant, and defendant therefore has converted the same to its own use and benefit and is thereby liable to the plaintiffs for the full value thereof, which is $1,047.25, with legal interest thereon, for which sum plaintiffs here now sue."

In a supplemental answer, appellant excepted to the part of the supplemental petition just set out, on the ground that the allegations therein stated a new cause of action against him, which could not be set up in a supplemental petition; and then alleged that the tariff and regulations before referred to provided that all charges in connection with baggage not collected by the forwarding agent "would be sent under a C. O. D. check, and which is a different contract than where the charges are paid at point of origin," that the trunk in question was not sent under such a check, and that "no charges were to be paid at the point of destination."

It appeared, from testimony heard at the trial, that Boswell and his wife had planned to go from Memphis to Childress, towns in Texas—Boswell by automobile, and his wife by one of the carrier's trains. On Sunday, November 23, 1919, Boswell purchased a ticket for use by his wife in making the trip, and, on presenting the ticket and the trunk to the carrier's agent at Memphis, received a check showing that the carrier had accepted the trunk for carriage to Childress. After Boswell purchased the ticket and checked the trunk, his wife concluded to go with him in the automobile instead of in the carrier's train. Boswell did not know, until a few minutes before he and his wife left Memphis in the automobile, that she had determined to go with him instead of on the train. On Tuesday, December 2, 1919, Boswell went to the carrier's office in Childress and called for the trunk in question. It was not delivered to him, but the carrier's agent promised, if he "would wait a couple of days," he would get it for him. Boswell repeatedly thereafter demanded the trunk of the carrier, but it was never delivered to him. Testifying as a witness, Boswell said:

"The man who sold me the ticket was the same man who checked the baggage. This man and myself had a conversation there at the time. I said to him, 'I have two trunks to check and I think there will be some excess;' and he said, 'You can just pay the excess at the other end of the line.' He says, 'they always weigh it up down there.' I says, 'I have got some valuation here, too;' and he says, 'The man that looks after that is up town.' I said, 'When will he be here?' He said, 'This is Sunday, and I don't think he will be here any more this afternoon.' If the man whose duty it was to attend to that had been there, that is the man who looked after this excess valuation, I would have paid whatever excess valuation there would have been required as asked by them for the true value of the trunk. I am willing now to pay whatever excess there may be due on these tariffs."

Appellant offered, and the court admitted, as evidence, parts as follows of Baggage Tariff No. 25–2, dated October 22, 1918, filed with the Interstate Commerce Commission "for and on behalf (it was agreed at the trial) of the United States Railroad Administration" in force at the time the trunk in question was checked, and applicable to the Fort Worth & Denver City Railway:

Rule 1, Section A. "Baggage checks will be issued for articles authorized herein upon presentation by the owner of valid transportation, only when the owner of the property is also the owner of the transportation and is a bona fide passenger over the same line to or beyond the destination of the baggage."

Rule 10, Section A. " * * * 150 pounds of baggage, not exceeding $100 in value, may be checked without additional charge for each adult passenger."

Rule 10, Section D. "Unless a greater sum is declared by a passenger and charges paid for excess value at time of delivery to carrier, the value of property belonging to or checked for a passenger shall be deemed and agreed to be not in excess of the amount specified in rules 5, 6 and 10, and the carrier issuing and participating in this tariff will not accept claim for a greater sum in case of loss or damage.

"If passenger declares according to the form prescribed by checking carrier a greater value than specified in the rules mentioned in the preceding paragraph there will be an additional charge at the rate of ten cents for each $100 or faction thereof above such agreed maximum value. Minimum charge, ten cents.

"Charges for excess value should be prepaid whenever possible, and are separate and distinct from the charges for excess weight and size."

The rules 5 and 6 referred to are not in the record sent to this court, nor is the rule 10 referred to therein, unless it is identical with the "rule 10, section A," set out above.

Rule 13. "All charges in connection with baggage or property should be collected by the forwarding agent, but when it is necessary to collect at destination, a C. O. D. check will be issued, giving explicit directions as to the amount to be collected."

Special issues were submitted to the jury, and they found that the trunk in question and its contents was delivered to and accepted by the carrier November 23, 1919; that it was never redelivered to appellees; that the value of the trunk and its contents was $800; that, at the time Boswell had the trunk checked, he offered to declare and pay the excess baggage and valuation charges thereon, if any; that the carrier's agent did not accept the offer; and that, if said agent had accepted it, appellees would have paid such excess charges.

The appeal is from a judgment in appellees' favor for $800.

T. B. Walker, and Thompson, Barwise, Whatton & Hiner, all of Fort Worth, for appellant.

Capps, Cantey, Hanger & Short, Alfred McKnight, and Julian B. Mastin, all of Fort Worth, for appellees.

WILLSON, C. J. (after stating the facts as above). [1] Appellant requested the trial court to instruct the jury to return a verdict in his favor, and in his first assignment complains of the refusal of the court to do so. The request was predicated on rule 1, section A, of Baggage Tariff 25–2, set out in the statement above, on the fact that the ticket, by virtue of which the trunk was checked, was never used for any other purpose, and on the fact that neither of the appellees traveled on the train which carried the trunk. Appellant argues that the carrier therefore was a gratuitous bailee of the trunk and was liable only for gross negligence in handling it. The testimony did not authorize a finding, he insists, that the carrier was guilty of such negligence, and hence it was error, he asserts, to refuse to give the requested instruction.

The assignment is overruled. By force of the statute of this state (article 6618, Vernon's Statutes), had either of the appellees traveled to Childress on the train that carried the trunk to that place he or she would have been entitled, had the trunk not weighed over 100 pounds, to have it carried for the consideration paid by Boswell when he purchased the ticket; and, in the event stated, if the trunk had not weighed more than 150 pounds and exceeded $100 in value, the carrier would have been bound by rule 10, section A, set out in said statement, to have carried it for that consideration. As we understand appellant, he does not contend that the carrier would have been a gratuitous bailee under the circumstances stated. His contention seems to be that the carrier was such a bailee, not because nothing was paid for the carriage of the trunk, but because neither of appellees accompanied it on train. The contention is supported by authorities appellant cites, but there are authorities to the contrary which we think state the better rule, when the changed conditions under which people now travel on railroads are kept in mind. Sup. 1, R. C. L. 1334, and cases there cited; Ry. Co. v. Knox, 184 Ala. 485, 63 South. 538; Larned v. Ry. Co., 81 N. J. Law, 571, 79 Atl. 289; Ry. Co. v. De Witt, 115 Ark. 578, 171 S. W. 906; Ry. Co. v. Dinkins, 139 Ga. 332, 77 S. E. 147, 43 L. R. A. (N. S.) 806; McKibbin v. Ry. Co., 100 Minn. 270, 110 N. W. 964, 8 L. R. A. (N. S.) 489, 117 Am. St. Rep. 689. The view now generally taken of the question by the courts is stated as follows, in the volume of Ruling Case Law cited:

"The view that the carrier is only liable as a gratuitous bailee where the passenger does not accompany his baggage has been the subject of severe criticism, as not fitted to modern

conditions. Thus it has been said: 'There seems to be nothing whatever in the modern practice, of railroad transportation, with the system of checking baggage, to make it an implied part of the contract that the passenger shall go upon the same train, or, indeed, avail himself of his right to be carried at all, unless he chooses to do so.' Having paid for two privileges, there is no reason why he should be compelled to avail himself of both or neither, unless the carrier's burden in respect to one of them is increased by his failure to exercise the other. It is not possible to see how this is the case. The carrier's duty with respect to the baggage is in no sense more onerous by reason of the owner's absence from the train. The carrier is, indeed, entitled to have its liability as such terminate within a reasonable time after the journey ends, but this is the same whether the owner has come on the train with it or not."

It appeared, without dispute in the testimony, that Boswell purchased the ticket by virtue of which the trunk was checked for use by his wife in going to Childress on the train which carried the trunk, and did not know, until after the trunk was checked, that she would not go that way. And it did not appear that the ticket was sold to him under a special contract or for a less sum than the regular price charged by the carrier for transporting persons from Memphis to Childress.

[2] The contention that the judgment was unauthorized, so far as it was for a sum in excess of $100, is based on rule 10, section A, rule 10, section D, and rule 13, set out in said statement, and on testimony showing, as appellant construes it, that Boswell did not, at the time he checked the trunk, declare it had a greater value than $100, and testimony showing that appellees did not pay the carrier for the excess value of the trunk and its contents above $100, and that the trunk was not carried on a C. O. D. check. Payne v. McConnell, 234, S. W. 942, decided by this court, and Hines v. Burnett, 107 S. E. 657, decided by the Supreme Court of Appeals of Virginia, are cited as cases supporting the contention. But those cases are plainly distinguishable from this one in their facts. In neither of them did it appear, as it does in this one, that the plaintiff offered to declare the excess value and pay the excess charges at the time the baggage was checked. It will be noted that the rule invoked (rule 10, section D) contained a qualifying clause, to wit, that "charges for excess value should be prepaid whenever possible," indicating that, under exceptional circumstances, the excess value charges need not be paid at the time the baggage was checked. Such circumstances existed in this case in the facts shown in the testimony of Boswell, set out in said statement, that the agent of the carrier, who checked the trunk, declined Boswell's offer to declare the excess

value because the agent of the carrier who looked after that detail of its business was "up town." The absence of that man doubtless also accounted for the fact that a C. O. D. check was not given Boswell when the carrier declined Boswell's offer to declare the excess value. Boswell would have paid the charges for such value at the time he checked the trunk had he been given an opportunity to do so, he testified, would have paid same at any time thereafter had the carrier demanded it, and, in his pleadings at the trial tendered payment thereof. Under such circumstances, we do not see how it can be contended with reason that to sustain the recovery had by appellees would be a discrimination in their favor against others for whom the carrier transported baggage. Therefore the contentions presented by the third, fourth, fifth, sixth, and seventh propositions in appellant's brief are overruled, as are also the ninth and tenth, which present other contentions we regard as without merit.

[3] The contention remaining undisposed of is that the trial court erred when he overruled appellant's exception to the part of appellees' supplemental petition charging the carrier with a conversion of the trunk and its contents, set out in said statement. The ground of the exception was that the charge constituted a new cause of action which should have been set up by an amended petition and could not be set up by a supplemental petition. What has been said in disposing of the other contentions made by appellant was with reference to the case made by the amended petition. If the conclusions reached are correct, the error of the trial court in overruling the exception, if it was error, would not be a reason why the judgment should be reversed. On the other hand, if it was not error to overrule the exception, the judgment should be affirmed, even if those conclusions are incorrect; for the testimony was amply sufficient to support a finding that the carrier was guilty of a conversion of the trunk and its contents as charged, in that it appeared without dispute that the trunk was delivered to it at Memphis, that it carried same to Childress, that appellees there repeatedly demanded same of it, and that, without offering any excuse whatever for so doing, it failed and refused to deliver same to them. For anything appearing to the contrary in the record, the carrier had the trunk and its contents in its possession at the time the demands were made and at all times thereafter to and including the time of the trial. 38 Cyc. 2031; 26 R. C. L. 1117. On the theory that the cause of action declared on in the original petition was for breach of a contract, and that set up in the supplemental petition was for a tort, we are inclined to think the exception should have been sus-

tained, but, for the reason stated, we do not think the error, if it was one, requires a reversal of the judgment.

The judgment is affirmed.